IN THE MATTER OF NICHOLAS ALBANO, JR.,
JUDGE OF THE ESSEX COUNTY DISTRICT COURT.

Argued February 21, 1978—Decided March 20, 1978.

*Mr. Robert E. Cowan,* designated counsel, argued the cause for The Advisory Committee on Judicial Conduct.

*Mr. Stephen B. Wiley* argued the cause for respondent (*Messrs. Wiley, Malehorn & Sirota,* attorneys; *Mr. George H. Martini* on the brief).

PER CURIAM. Respondent Nicholas Albano, Jr. is an Essex County District Court Judge appointed on April 5, 1973. Presently, he is the Presiding Judge of the Essex County District Court. The instant proceedings against him had their origin in a complaint filed with the New Jersey Supreme Court Advisory Committee on Judicial Conduct by Essex-Newark Legal Services Corporation charging respondent with misconduct as a judge.[1] Pursuant to *R.* 2:15 the Committee made a preliminary investigation of the complaint, respondent's answer thereto and numerous transcripts of Essex County District Court trials presided over by respondent.

The Committee then conducted a hearing at which respondent appeared. The charges against him as reflected in the trial transcripts were reviewed and respondent was afforded the opportunity to respond.

Thereafter the Committee filed its Presentment and Recommendation for Institution of Formal Proceedings for removal of respondent as Judge of the Essex County District Court pursuant to *N. J. S. A.* 2A:1B-1 *et seq.* The Committee found that nothing before it reflected in any way on respondent's integrity, his inherent legal abilities or his hardworking attention to his duties. However, on the basis of the trial transcripts and other relevant documents placed before it, the Committee found beyond a reasonable doubt

---

[1] For a discussion of the statute providing for the removal of a judge from office by the Supreme Court and its implementation by rules of Court under which the Advisory Committee on Judicial Conduct functions, see *In re Yengo,* 72 *N. J.* 425 (1977).

that respondent was unsuited by temperament and demeanor to continue as a Judge of the Essex County District Court and that his judicial conduct had been shown to be in violation of the Code of Judicial Conduct, Canons 1, 2, 3A(1), (2), (3) and (4).

Respondent then filed a motion under *R.* 2:15–13 for an order denying or rejecting the Committee's Recommendation for Institution of Formal Proceedings. This Court allowed respondent to present oral argument on this motion and also ordered him to show cause why he should not be censured or reprimanded in lieu of being subjected to formal proceedings for removal. The matter has now been fully argued before this Court. Our conclusion is that respondent's conduct as a judge, hereinafter referred to, has been shown to be improper and in violation of the Code of Judicial Conduct. Censure for his actions is required. However, the extreme penalty of removal, carrying with it the drastic sanctions[2] it does, is not warranted.

The Committee's findings of judicial misconduct fall into four general categories. They are: (a) intemperate conduct duding judicial proceedings; (b) repeated misapplication of law; (c) bias against attorneys from Essex-Newark Legal Services Corporation; (d) criticism of tenant-oriented laws. There is also one instance of an *ex parte* communication by respondent to the Rent Leveling Board of East Orange regarding a decision by the Board which respondent felt had attempted to overrule one of his decisions.

It is unnecessary to discuss specifically each instance of misconduct as set forth in the Presentment. Some of them, in the light of respondent's explanations, are debatable as to whether or not respondent exceeded the bounds of judicial propriety. Others, however, clearly manifest a lack of judicial demeanor, patience and understanding and, in some

---

[2]*N. J. S. A.* 2A:1B–9 provides that a judge removed from office by the Supreme Court shall not thereafter hold judicial office.

instances, an attempt at sarcasm and humor that does not belong in a courtroom.

One case, referred to by the Committee in its Presentment, reflects several of the charges of alleged judicial misconduct on respondent's part. *Rabinowitz v. Bennett,* heard on November 28, 1973, involved a summary proceeding to dispossess a tenant for non-payment of rent. At the hearing a law student from the Rutgers Urban Legal Clinic appeared for the tenant pursuant to *R.* 1:21–3(c). When the landlord, "as a taxpayer," complained about the tenant being provided with a "free lawyer," respondent said there was nothing the court could do about it but suggested that an attorney be consulted as the landlord was entitled to know the basis on which the application for representation was made and if there was a false statement, there would be a prosecution for false swearing.

The hearing then commenced with the landlord testifying to the tenancy, the tenant's non-payment of one month's rent amounting to $210 and the tenant still remaining in possession. The law student representing the tenant then sought permission to ask the landlord some questions about conditions in the apartment, stating that the tenant intended to present a *Marini*[3] defense.

Respondent stated that before he would hear a *Marini* defense he would have to know whether the tenant was able to pay the rent and costs "right now." Respondent was assured that the tenant had the money with her. Respondent then asked the law student to make a proffer of proof so he could determine whether or not a *Marini* defense existed. He also said that the tenant would have to prove a written notice to the landlord of the defects.

---

[3]*Marini v. Ireland,* 56 *N. J.* 130 (1970) and its progeny afford tenants in housing accommodations the right to have an abatement of rent in instances where living conditions are so deplorable as to have resulted in a breach of the express or implied covenant of habitability.

In response respondent was told of mice and rat infestation, a large bulge in the ceiling of the front room so that the ceiling was about to fall, water seepage in the kitchen from under the sink, a problem with hot water and garbage in and around the premises, stairways and cellar. Respondent answered that none of this went to habitability — that these were health complaints and should be directed to the Newark Board of Health. Respondent then made the following comment:

Now, why am I so irritable and harsh about this whole proceeding? And you're probably correct that I'm not as kind to you as I might be, because I don't want to listen to rats, I don't want to listen to bulges, I don't want to listen to seepage, I don't want to hear about hot water, and I don't want to hear about garbage.

When the law student persisted in her contention that the conditions complained of affected habitability, respondent told her to turn around and look at everyone else in the courtroom "and you take all the time you want."[4]

Finally, it was stated by the law student that the tenant wanted to present the defense of retaliatory eviction. Respondent brushed this aside noting that this was a non-payment of rent case and all the tenant had to do was pay the rent. Respondent then added:

You know I try to be patient, but I do wish that — Now, if there's a holdover situation where there's a notice to quit and surrender possession, then you have an area for reprisal * * * I have studied some of this stuff and I resent bitterly Rutgers and Seton Hall and the other associations coming in with the same defenses day in and day out.

Judgment for possession was entered in favor of the landlord without hearing any defense evidence. We think the

---

[4]Obviously respondent was seeking to terminate further argument, as the law student understood, since she replied "I think my client is entitled to however much time the case takes to be heard."

incident is regrettable. Unfortunately, there are others like it.

Without doubt, the Essex County District Court is one of the busiest courts in the State. Landlord and tenant cases from the Newark area are particularly difficult since the court must deal with dilapidated housing and low income families in many cases. The pressures on the court to handle these cases along with the volume of other work and dispose of the calendar are understandable.

The District Court, though, like any other court, is a forum for justice. Many of the people who come there are poor, uneducated and on welfare. Some of them appear *pro se* or are represented by Legal Services attorneys or law students appearing under *R.* 1:21–3(c). So often it is the same story day after day, hundreds of times. It is not difficult to develop an insensitivity to the plight of the people involved.

Despite all of this, it is the judge's obligation to see that justice is done in every case that comes before him. This includes not only reaching the correct legal result in the particular case, but also the exhibiting at all times of judicial demeanor, patience and understanding. People come to the court to be heard. They have a right to expect that in presenting their grievances they will be treated with respect. In *In re Yengo, supra,* 72 *N. J.* at 450, Chief Justice Hughes observed:

> The poorest, weakest most hapless or illiterate defendant standing before an American court, is entitled to exactly the same respect, rights and hearing as would be the Chief Justice of the United States standing before the court and similarly accused.

An attempt at judicial sarcasm or humor, directed at a litigant, witness, attorney or law student appearing under *R.* 1:21–3(c), has no place in a courtroom. It is deeply resented and inevitably demeans the judge himself.

It should be noted that respondent appeared before the Advisory Committee on a prior occasion in answer to a complaint about his conduct in a December 1974 hearing involving a *pro se* defendant. In that matter respondent was criticized by the Advisory Committee for the abrupt way he treated the defendant, but warrant for a recommendation of disciplinary action was not found.

In fairness to respondent, many of the incidents referred to in the Presentment and Recommendation occurred during the first years of his judicial term. In several of the instances, respondent, after saying and doing what had been complained of, seemed to feel that perhaps he was being misunderstood, as he then offered to sit down with the person involved at the conclusion of court and review the matter. Also, there must be weighed in the balance, the Advisory Committee's observation that none of its findings reflect in any way on respondent's integrity, his inherent legal abilities or his hardworking attention to his duties.

In one case, *Housing Authority of the City of Newark v. Susie West* (November 16, 1973), it was complained that respondent's language and demeanor demonstrated an insensitivity to both the legal and human problems of those tenants appearing before him. However, in the case, despite a misguided attempt at humor at one stage of the proceedings, respondent showed considerable compassion for the plight of the tenant and stayed issuance of the warrant for her removal to permit her to pay the rent arrearages in installments over a 22-month period. Indeed, the landlord appealed and secured a vacation of the stay of the warrant on the ground that the trial judge had exceeded his authority. 132 *N. J. Super.* 229 (App. Div. 1975). This Court affirmed the appellate ruling, 69 *N. J.* 293 (1976). Neither the Appellate Division nor this Court saw fit, at the time, to express a criticism of respondent's language.

Considering all of the circumstances, we conclude that while respondent's conduct as a judge was, in many instances, improper and in violation of the Code of Judicial

Conduct, a complaint for removal pursuant to *N. J. S. A.* 2A:1B–1 *et seq.* is not warranted. Instead, in the exercise of our inherent power, respondent is hereby censured for such conduct. See *In re Conda,* 72 *N. J.* 229 (1977). We are confident that in view of the justifiable criticism by the Advisory Committee and our admonishment, respondent will recognize his past mistakes and will avoid repetition of them in the future.

*For censure*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—7.

*Opposed*—None.