IN THE MATTER OF RONALD L. HORAN, JUDGE OF THE HIGH-
LANDS BOROUGH, KEANSBURG BOROUGH AND KEYPORT
BOROUGH MUNICIPAL COURTS, MONMOUTH COUNTY.

Argued March 10, 1981—Decided April 23, 1981.

*Colette A. Coolbaugh* argued the cause for the Advisory
Committee on Judicial Conduct (*Colette A. Coolbaugh*, attorney;
*David E. Johnson* on the briefs).

*Francis X. Crahay* argued the cause for respondent (*Giordano,
Halleran & Crahay*, attorneys).

PER CURIAM.

This disciplinary proceeding involves an inquiry into the judi-
cial conduct of a municipal court judge. In January 1978, a
letter was written to the Advisory Committee on Judicial Con-
duct (Committee) by Sheila and Nicholas Doherty alleging un-
ethical conduct on the part of respondent Judge Ronald L.
Horan in proceedings before the Highlands Municipal Court.
Following a preliminary investigation, the Committee issued a
formal complaint charging respondent with violations of Canons
1, 2A, 3A(1), (2), (3) and (4) and 3B of the Code of Judicial

Conduct. A formal hearing was then held at which respondent appeared with counsel and testified. As a result of these proceedings, the Committee filed a presentment with this Court recommending that proceedings be instituted pursuant to *N.J. S.A.* 2A:1B–1 *et seq.* for the removal of respondent from his judicial office.

Upon being served with a copy of the Committee's Presentment and recommendation, respondent, pursuant to *R.* 2:15–13, moved to have this Court deny or reject the Committee's recommendation. Respondent was allowed to present oral argument in support of this motion and was also ordered to show cause why he should not be censured or reprimanded in lieu of being subjected to formal proceedings for removal from office. After hearing full argument in the matter, we conclude that respondent's conduct as a judge in the *Doherty* matter was improper and in violation of the Code of Judicial Conduct and that he should be publicly reprimanded. Removal from office, however, which operates to bar a judge from thereafter holding judicial office, see *N.J.S.A.* 2A:1B–9, is not warranted.

The Dohertys, who owned a bungalow and property in Highlands, had filed a complaint against an adjoining property owner, Albert J. Gross, charging him with trespass and maliciously cutting down hedges on their property. The complaint was filed in the Highlands Municipal Court and was heard by respondent who is the judge of that court. Both parties appeared *pro se.* Gross admitted that he had cut down the hedges, but claimed that the Dohertys had failed to maintain their premises in proper condition. Apparently this contention struck a responsive chord with respondent as evidenced by his conduct and remarks which were summarized by the Committee in the Presentment as follows:

> 1. Respondent failed to conduct the trial in a patient, dignified and courteous manner. During the course of the hearing respondent made insulting and injudicious remarks concerning the condition of the Doherty property. Respondent further commented unfavorably upon the fact that the Doherty family was

in Europe at the time of the alleged criminal trespass. In this regard, respondent, speaking of the Doherty property stated:

"... I'm [going to] have the Building Inspector up there; and ... the Fire Inspector ..., and ... the Health Inspector up there ... and I'm [going to] have the whole town up there, plus myself. I'm [going to] look at this place. I don't think a neighborhood has ... should have [to] live ... while somebody's flaunting around Europe ... and ivy growing up all over ... and kids running around it."

Following the above comment by respondent, he found defendant Gross not guilty and again stated he would order a multitude of Borough Inspectors to the Doherty property. Respondent's finding of not guilty and the aforementioned comments were made despite the fact that defendant Gross admitted cutting down the hedges in question.

2. Respondent failed to conduct the trial of *State v. Gross* in an impartial manner and exhibited bias against complaining witness Doherty. The transcript revealed that respondent offered advice and guidance to defendant Albert Gross during the course of the trial, allowed Gross to testify at length and severely curtailed the testimony of Nicholas Doherty and his witnesses.

In this regard, during the examination of Gross by Doherty, respondent interrupted and told Gross, ... "Don't ... give him ... any more to hang on." Shortly thereafter, respondent again interrupted to advise Gross to ... "Don't answer ... that question ... don't answer ... [you] put your foot in your mouth ... Just ... be ... quiet."

Respondent permitted defendant Gross wide latitude during his testimony and explanation of the events in question. However, respondent cut short the questioning by Nicholas Doherty of his own witnesses and his cross-examination of Gross. Though neither Gross nor Doherty are attorneys, respondent saw fit to strictly apply standards of evidence and procedure to Doherty while liberally applying those same standards to Gross.

The record establishes that respondent, apparently influenced by the belief that the Doherty property was in a run-down condition, failed to preside over the court hearing in a dignified, courteous, patient and impartial manner. In effect, the hearing was turned into a complaint against the Dohertys. It is small wonder that in their letter of complaint to the Committee, the Dohertys characterized the episode as "a black eye to justice in New Jersey."

In *In re Albano*, 75 *N.J.* 509, 514 (1978), we said that

it is the judge's obligation to see that justice is done in every case that comes before him. This includes not only reaching the correct legal result in the particular case, but also the exhibiting at all times of judicial demeanor, patience

and understanding. People come to the court to be heard. They have a right to expect that in presenting their grievances they will be treated with respect.

The municipal court is, in many respects, the most important in our judicial system. For many citizens, it is their only exposure to the courts and judges of this State. Accordingly, the entire system is measured by their experience in the municipal court. *In re Mattera*, 34 *N.J.* 259, 275 (1961). As was stated in *In re Yengo*, 72 *N.J.* 425, 434 (1977), "municipal courts, from the standpoint of contact, observation and acceptance by the public, are in a preeminent position for the sustaining of universal respect for the administration of justice." See also Vanderbilt, "The Municipal Court—The Most Important Court in New Jersey: Its Remarkable Progress and Its Unsolved Problems," 10 *Rutgers L.Rev.* 647 (1956).

In the *Doherty* matter investigated by the Committee, respondent failed to fulfill this unique but vital responsibility. His violations of the aforementioned Canons are patent and inexcusable. This single incident, however, does not indicate a course of conduct. Respondent for some years has served as judge of several municipal courts. In this isolated incident it appears that respondent mistakenly thought he was called upon to do something about the alleged condition of the Doherty property. It was in what he said and did in this connection that he overstepped his role as a judge.

Taking into account all these factors in determining discipline, we conclude that censure for such conduct is most appropriate in the instant case. Therefore, respondent is hereby publicly reprimanded and warned that future conduct of this nature may result in his removal from office.

*For reprimand*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*Opposed*—None.