**In re INQUIRY CONCERNING Alvin D. LICHTENSTEIN, A District Judge.**

**No. 83SA490.**

Supreme Court of Colorado, En Banc.

July 16, 1984.

George S. Meyer, Denver, for Commission on Judicial Discipline.

Rothgerber, Appel & Powers, Charles Goldberg, Frederick J. Baumann, Denver, for Judge Alvin D. Lichtenstein.

PER CURIAM.

Pursuant to Article VI, Section 23(3)(e) of the Colorado Constitution, the Commission on Judicial Discipline (Commission) certified the record of these proceedings to this court and recommended that a public reprimand be issued to District Judge Alvin D. Lichtenstein because he violated Canon 2A of the Colorado Code of Judicial Conduct (Code). Having reviewed the record of the proceedings as required by Article VI, Section 23(3)(f) of the Colorado Constitution, we conclude that the conduct of Judge Lichtenstein did not violate Canon 2A of the Code. We therefore reject the Commission's recommendation of a public reprimand and return the case to the Commission with directions to dismiss the complaint.

I.

On December 5, 1983, a formal complaint[1] was filed with the Commission, alleging that on June 22, 1983, while serving as a district judge in the Denver District Court and presiding over a criminal action, Judge Lichtenstein made remarks during a sentencing hearing which "undermined public confidence in the integrity and impartiality of the judiciary" and "tended to bring the judiciary into disrepute" in violation of Canon 2A of the Code.[2] The facts are not in dispute. Judge Lichtenstein was appointed a district judge of the Second Judicial District on January 4, 1978. In November 1980 he was elected to serve a six year term and is currently serving that term of office. During the events in question he was assigned to the criminal division of the Denver District Court. As part of his judicial responsibilities, Judge Lichtenstein heard various motions in the case of *People v. Clarence Burns* (Criminal Action No. 82CR1900), in which Burns was charged with the first degree murder of his wife on August 15, 1982.[3] During the pendency of the case, the defendant filed a motion to suppress a confession, which was heard by Judge Lichtenstein on April 4, 1983. Various witnesses testified at the suppression hearing, including a clinical psychologist who described the defendant's condition on August 15, the day of

1. Rule 6 of the Rules of Procedure for the Commission on Judicial Discipline authorizes the Commission to appoint an examiner to investigate any matters concerning a judge within its jurisdiction. The examiner, after completion of the investigation, reports his findings, conclusions, and recommendations to the Commission. Rule 7(a) provides as follows:

"After the preliminary investigation has been completed, if the commission concludes that formal proceedings should be instituted, the commission shall *without delay* direct that a complaint be filed by an examiner and shall issue a notice to the judge advising him of the institution of formal proceedings to inquire into the charges contained in the complaint against him. The notice shall advise the judge of his right to file a written answer to the complaint within fifteen days after service of the notice upon him in person or twenty days after service upon him by mailing. A com-

plaint in formal proceedings shall set forth in ordinary and concise language the charges against the judge and shall specify the alleged facts upon which such charges are based and shall be verified." (Emphasis in original).

2. After the formal complaint was filed and during the preliminary investigation of this matter by the Commission, other complaints were filed alleging that Judge Lichtenstein exhibited a bias in favor of criminal defendants, particularly those who allegedly committed crimes against women, and that he had a bias against women. These charges were investigated by the Commission and found to be without substance or merit. We therefore limit our consideration to the sentencing remarks made by Judge Lichtenstein.

3. § 18–3–102, 8 C.R.S. (1978 & 1983 Supp.).

the shooting, as one of severe and suicidal depression resulting from the fact that he and his wife had separated earlier in the month. The judge granted the motion, ruling that the defendant's state of depression preexisted and continued after his arrest and "caused a cognitive impairment which prevented the Defendant from understanding his *Miranda* rights and [from] intelligently waiving them." Thereafter, a plea agreement was reached between the defendant and the district attorney's office and, on May 2, 1983, the defendant entered a plea of guilty to second degree murder[4] in exchange for a dismissal of the first degree murder charge. The defendant's guilty plea was accepted, and the case was continued for a sentencing hearing on June 22, 1983.

During the sentencing hearing the judge received the stipulated testimony of one witness, considered the testimony of five additional witnesses, reviewed the video-taped deposition of the defendant's and victim's fifteen-year-old son, and considered the statements of counsel. Judge Lichtenstein began his remarks by stating that he had thoroughly reviewed the presentence report and had considered the matters presented by both sides during the sentencing hearing. Noting that Colorado case law required him to state on the record the reasons for the imposition of a sentence, the judge proceeded to describe the various degrees of homicide, the presumptive sentence of eight to twelve years for second degree murder,[5] the statutory provision authorizing a sentence outside the presumptive range for extraordinary mitigating or aggravating circumstances,[6] and concluded that extraordinary mitigating circumstances existed in this case. After stating that

he was incorporating the specific findings of fact which he had previously made in ruling on the defendant's motion to suppress, the judge found that the defendant's capacity to appreciate the wrongfulness of his conduct was significantly impaired by a state of severe depression arising from his inability to understand why his wife had left him. The judge then made the following remarks which formed the basis of the formal complaint filed against him:

> "The Court finds that this mental state, his mental and emotional condition, combined with the sudden heat of passion caused by a series of highly provoking acts on the part of the victim of leaving him without any warning; in fact, based on the testimony that the Court has heard, in a sense deceiving him as to her intentions by being extremely loving and caring up to and through the morning that she left the family home with the full intention of obtaining a divorce and proceeding with a separation from him without even giving him any knowledge of her whereabouts or that of their son, the Court finds that this [a]ffected the Defendant sufficiently so that it excited an irresistible passion as it would in any reasonable person under the circumstances and, consequently, would warrant a sentence under the extraordinary mitigating terms of the statute."

The judge imposed a sentence of four years plus one year of parole, suspended the sentence, and ordered the defendant to undergo supervision by the Probation Department under various conditions including a two-year work release sentence to the county jail and the successful completion of a program of psychotherapy.[7] The sen-

---

4. § 18–3–103, 8 C.R.S. (1978).

5. § 18–1–105(1)(a), 8 C.R.S. (1983 Supp.).

6. Section 18–1–105(6), 8 C.R.S. (1983 Supp.), states that if extraordinary mitigating or aggravating circumstances are found to exist, the court may impose a sentence which is lesser or greater than the presumptive sentence, except that in no case shall the term of sentence be greater than twice the maximum nor less than

one-half the minimum term authorized in the presumptive range for the offense.

7. After the sentencing hearing, the judge on June 28, 1983, *sua sponte,* vacated the suspended sentence and imposed a sentence of four years imprisonment plus one year of parole. Thereafter, the defendant and the district attorney filed original proceedings in this court directed to the June 22 and June 28 sentences. The defendant requested that the sentence of June 28 be vacated and that the original sen-

tencing comments of the judge and the four-year suspended sentence generated extensive publicity. The formal complaint was thereafter filed with the Commission.

The Commission found that Judge Lichtenstein's sentencing remarks "did not convey his intended meaning, and, as a direct result, the public questioned [his] impartiality on the bench and his ability and willingness to faithfully adhere to the law." The Commission concluded that, although not constituting willful misconduct, the judge's remarks nonetheless violated Canon 2 A by bringing the judiciary into disrepute and undermining public confidence in the integrity and impartiality of the judiciary. The Commission, with three members dissenting, recommended a public reprimand.

## II:

Because we have not previously addressed the matter of judicial discipline under Article VI, Section 23 of the Colorado Constitution, we take this occasion to delineate the constitutional basis of our responsibility in this matter. Article VI, Section 23(3), which became effective on July 1, 1983, states in pertinent part:

"(d) A justice or judge of any court of record of this state, in accordance with the procedure set forth in this subsection (3), may be removed or disciplined for willful misconduct in office, willful or persistent failure to perform his duties, intemperance, or violation of any canon of the Colorado code of judicial conduct, or he may be retired for disability interfering with the performance of his duties which is, or is likely to become, of a permanent character.

"(e) The commission may, after such investigation as it deems necessary, order informal remedial action; order a formal hearing to be held before it concerning the removal, retirement, suspension, censure, reprimand, or other discipline of a justice or a judge; or request the supreme court to appoint three special masters, who shall be justices or judges of courts of record, to hear and take evidence in any such matter and to report thereon to the commission. After a formal hearing or after considering the record and report of the masters, if the commission finds good cause therefor, it may take informal remedial action, or it may recommend to the supreme court the removal, retirement, suspension, censure, reprimand, or discipline, as the case may be, of the justice or judge. The commission may also recommend that the costs of its investigation and hearing be assessed against such justice or judge.

"(f) Following receipt of a recommendation from the commission, the supreme court shall review the record of the proceedings on the law and facts and in its discretion may permit the introduction of additional evidence and shall order removal, retirement, suspension, censure, reprimand, or discipline, as it finds just and proper, or wholly reject the recommendation. Upon an order for retirement, the justice or judge shall thereby be retired with the same rights and privileges as if he retired pursuant to statute. Upon an order for removal, the justice or judge shall thereby be removed from office, and his salary shall cease from the date of such order. On the entry of an order for retirement or for removal of a judge, his office shall be deemed vacant.

"(g) Prior to the filing of a recommendation to the supreme court by the commission against any justice or judge, all papers filed with and proceedings before the commission on judicial discipline or masters appointed by the supreme court, pursuant to this subsection (3), shall be confidential, and the filing of papers with and the giving of testimony before the

---

tence of June 22 be reinstated. The district attorney, on the other hand, requested that both sentences be vacated and that the district judge be directed to impose a sentence within the aggravated range or at least a sentence within the presumptive range for second degree murder. We held that the sentence of June 22 was an illegal sentence and remanded the case for resentencing. *People v. District Court of the City & County of Denver,* 673 P.2d 991 (Colo.1983).

commission or the masters shall be privileged; but no other publication of such papers or proceedings shall be privileged in any action for defamation; except that the record filed by the commission in the supreme court continues privileged and a writing which was privileged prior to its filing with the commission or the masters does not lose such privilege by such filing."

We note at the outset that Section 23(3)(g) of Article VI, in addition to vesting the Commission proceedings with confidentiality, creates a privilege with respect to the filing of papers and giving of testimony before the Commission, and further provides that the record filed by the Commission with this court shall continue privileged. While this constitutional provision is designed to serve several laudable purposes,[8] the precise scope and duration of the confidentiality and privilege it creates are uncertain. In 1983 the General Assembly attempted to clarify this uncertainty by enacting section 24–72–401, 10 C.R.S. (1983 Supp.), which states:

"The record of an investigation conducted by the commission on judicial discipline or by masters appointed by the supreme court at the request of the com-

mission shall contain all papers filed with and all proceedings before the commission or the masters. The record shall be confidential and shall remain confidential after filing with the supreme court. A recommendation of the commission for the removal or retirement of a justice or judge shall not be confidential after it is filed with the supreme court." [9]

This statute also leaves unanswered several questions relating to the scope and duration of the confidentiality and privilege applicable to proceedings before the Commission.[10] We need not concern ourselves with these questions in this case, however, for two reasons. First, the Commission and Judge Lichtenstein have expressly waived any confidentiality and privilege pertaining to the formal hearing before the Commission and have requested that the record and recommendation of the Commission be made public. Second, the hearing before the Commission was based on stipulated facts that do not involve the identity of any third party complainant or witness who otherwise might have an interest in preserving confidentiality. With these preliminary matters aside, we turn to the Commission's conclusion that Judge Lichten-

---

**8.** The purposes of the constitutional provision are perceived to be the following: (1) it encourages the filing of complaints and the participation of witnesses by providing limited protection against possible retaliation or recrimination; (2) it protects judges from injury and maintains public confidence in the judicial system by avoiding premature announcement of groundless claims; (3) it permits judges to be made aware of minor complaints without undue public notice; and (4) it encourages voluntary retirement or resignation before charges are made public. *See Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 835–36, 98 S.Ct. 1535, 1539–40, 56 L.Ed.2d 1 (1978).

**9.** Also enacted in 1983 was section 24–72–402, 10 C.R.S. (1983 Supp.), which provides: "Any member of the commission, master appointed by the supreme court, or anyone providing assistance to such commission or such masters who willfully and knowingly discloses the contents of any paper filed with, or any proceeding before, such commission or such masters, or willfully and knowingly discloses the contents of any recommendation of the commission before such recommendation is

filed with the supreme court is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars. This section shall not apply to any necessary communication between the members of the commission or the masters appointed by the supreme court or anyone employed to aid such commission or such masters in the filing or documentation of any paper filed with, or any proceedings before, such commission or such masters or the preparation of the recommendation of such commission."

**10.** One of the unanswered questions is whether the record of the proceedings before the Commission continues to be confidential after this court takes formal action on the Commission's recommendation. Other questions include whether statutory confidentiality encompasses a recommendation for a sanction less than removal or retirement, such as a public reprimand; and if so, whether this confidentiality continues after this court issues a public or private reprimand or, as here, rejects the Commission's recommendation entirely and orders the complaint dismissed.

stein's remarks violated Canon 2 A and its recommendations of a public reprimand.

### III.

■ Canon 2 A of the Code states that "[a] judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." This canon includes within its scope statements made by a judge during judicial proceedings. *See, e.g., Hayes v. Alabama Court of Judiciary*, 437 So.2d 1276 (Ala.1983) (per curiam) (suspension without pay until expiration of term of office for remarks from bench during dissolution proceeding implying that husband who fathered seven children would receive more favorable property distribution if he submitted to vasectomy within two weeks); *Gonzales v. Commission on Judicial Performance*, 33 Cal.3d 359, 657 P.2d 372, 188 Cal.Rptr. 880 (1983) (per curiam), *appeal dismissed*, ___ U.S. ___, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984) (removal from office for persistent and pervasive misconduct, including racial slurs to parties, attorneys, and jurors); *In the Matter of Inquiry Concerning a Judge Number 481*, 251 Ga. 524, 307 S.E.2d 505 (1983) (per curiam) (fifteen day suspension for derogatory and flippant remarks from the bench during trial); *In the Matter of Frankel*, 414 Mich. 1109, 323 N.W.2d 911 (1982) (order of public censure for repeated vulgarity and cursing in court); *In the Matter of Albano*, 75 N.J. 509, 384 A.2d 144 (1978) (per curiam) (public censure for expressing disgust from the bench with law students defending nonpayment of rent cases on warranty of habitability grounds). Judicial misconduct creating the need for discipline may thus arise from the same source as judicial conduct that is within the scope of appellate review. The former seeks to prevent potential prejudice to the judicial system itself, while the latter seeks to correct erroneous legal rulings prejudicial to a particular party. *See*

*In the Matter of Laster*, 404 Mich. 449, 274 N.W.2d 742 (1979) (per curiam).

■ The question of whether Judge Lichtenstein's remarks were violative of Canon 2 A must be evaluated in the context of the entire sentencing hearing. Section 18–1–105(7), 8 C.R.S. (1983 Supp.), which was applicable to the sentencing hearing in issue, requires a judge in imposing a sentence outside the presumptive range to "make specific findings on the record of the case, detailing the specific extraordinary circumstances which constitute the reasons for varying from the presumptive sentence." Judge Lichtenstein's remarks were made in an effort to place on record the extraordinary mitigating circumstances that he believed justified a sentence below the presumptive sentence of eight to twelve years applicable to second degree murder. The judge was attempting to describe how the victim's conduct, as perceived and interpreted by the defendant, brought about an emotional state in the defendant similar to the "irresistible passion" required for voluntary manslaughter.[11] Although the sentencing comments contain some phraseology which, when read in isolation, might have offended the sensibilities of others, the full context of the sentencing hearing indicates that the choice of words was no more than an awkwardly executed effort to place on record the confused and highly emotional state of the defendant at the time of the killing, which, in the judge's opinion, constituted a mitigating circumstance justifying a sentence below the presumptive range. The judge's comments were not intended to be disrespectful of the law, the victim, or anyone else; nor do they reasonably lend themselves to such a connotation in the full context of the hearing. We thus conclude that the judge's remarks were not such as to bring the judiciary into disrepute or to undermine public confidence in the integrity or impartiality of the judicial system within the intendment of Canon 2 A.

The recommendation of the Commission for a public reprimand is rejected and the

---

11. § 18–3–104(1)(c), 8 C.R.S. (1983 Supp.).

case is returned to the Commission with directions to dismiss the formal complaint.