# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0949-23

T.K.C.,[1]

    Plaintiff-Respondent,

v.

A.C.,

    Defendant-Appellant.

_____

        Submitted April 1, 2025 – Decided July 3, 2025

        Before Judges Gilson and Augostini.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-0493-24.

        A.C., appellant pro se.

        Rutgers Law Associates, attorneys for respondent (Samuel L. Romeo, on the brief).

PER CURIAM

---

[1] We use initials and pseudonyms to protect the confidentiality of these parties and the proceedings. R. 1:38-3(d)(10).

Defendant A.C. appeals from a November 17, 2023 final restraining order (FRO) entered in favor of plaintiff T.K.C., his spouse, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on harassment, N.J.S.A. 2C:33-4, and contempt of a domestic violence restraining order, N.J.S.A. 2C:29-9(b). Because the judge did not conduct the trial in an impartial manner, we reverse and remand for a new trial before a different judge.

I.

The parties were married and have two children: Anne and Caleb. At the time of the domestic violence incident, the parties were in the process of divorcing.

In 2023, plaintiff applied for and received a temporary restraining order (TRO) against defendant. That TRO was dismissed after a trial.

Later in 2023, plaintiff filed and obtained a second TRO. In the supporting domestic violence complaint, plaintiff alleged that defendant posted a false Yelp business review regarding her employment, which accused her of malpractice and of being under investigation for cheating at the college she was attending. Plaintiff also alleged defendant threatened to "falsely report" her for plagiarism in an effort to sabotage her efforts to obtain a license in the medical field. Plaintiff amended the complaint, alleging that defendant contacted the

2

police falsely claiming that the parties' two-year-old son was being driven in a car by plaintiff's mother without a car seat. The complaint also set forth several prior incidents of alleged domestic violence.

The trial began on October 6, 2023. Plaintiff was represented by counsel, and defendant was self-represented. The judge who presided over the second trial was the same judge who presided over the first trial. At the outset of the second trial, the judge stated she was "familiar with the parties." As plaintiff began testifying regarding the prior history of domestic violence, the judge interrupted, stating, "I'm fully familiar with the history" and directed counsel to go to the recent events.

Due to time constraints, the trial had to be adjourned on its first day, and plaintiff did not complete her testimony. The trial resumed on November 17, 2023. At neither the hearing on October 6, 2023 nor the one on November 17, 2023, did the judge advise defendant of the potential consequences of the entry of an FRO or his right to retain counsel before the hearing began.

When the trial resumed on November 17, 2023, plaintiff's counsel began anew with plaintiff's testimony, first addressing the September 8, 2023 incident alleged in the complaint. Plaintiff identified the Yelp review dated September

3

8, 2023 and then read it into the record without objection.  The review, in part, stated:

> I am intimately connected to [plaintiff], she is my spouse.  And though our personal relationship experience[s] up[s] and downs, up[s] and downs, leading to [a] strained family situation, I feel the need to separate our personal affairs from professional matters.

The review further stated that the reviewer's reason for writing this public review was to "ensure[] public safety" and not out of "personal retaliation."  After naming plaintiff directly, the review alleged "misconduct relat[ing] to the healthcare provided by [plaintiff] and the potential medical malpractices involved."  Plaintiff explained that because of defendant's repeated false accusations alleged in the review and involving her employment at this business, her employer terminated her contract.

Additionally, the review stated that [plaintiff] "has been put under investigation by Regis College for fraudulent academic activities," alleging that plaintiff partook:

> . . . in acts of plagiarism using AI to complete assignments, unauthorized use of aides during tests and sharing on prepared question answer cheat sheets, activities all fundamentally contrary to the principles of academic integrity.

4

Plaintiff denied each allegation and stated that after the college reviewed these allegations, they were deemed unfounded.

Even though plaintiff last amended the complaint on October 26, 2023, she testified regarding a Facebook post dated November 7, 2023. The post was addressed to the parties' daughter, Anne, on her first birthday. Counsel represented this post was a violation of the TRO; however, the complaint did not include this specific allegation. Nonetheless, the post was read into the record:

> "Happy first birthday, [Anne]. There'll be many times in your life where something happens and you won't understand why. You'll question your religion. You'll question humanity. . . .
>
> Your mother has done a really bad thing. But, never judge the person, only the actions. You will never know why someone does what they do, because most of the time they don't even know. Your dad now must accept a responsibility larger than himself, to ensure no dad ever endures the debilitating agony I exist with. But I promise you this, today on your birthday . . . [t]his sacrifice you, I, and your brother are being forced . . . to make will be to the benefit of countless families in the future. . . .
>
> Here, this video was taken June 16th. I'm smiling at you. Then I straighten my face. Then I smile again. This is you looking at your dad. I love you more than words. I'm coming for you and your brother. There is nothing that will ever stop your dad from rescuing you. Nothing ever. Just continue becoming. Life is

5

beautiful and it's because of its pain, not despite it. Love always, Dad."

As the post was read into the record, the judge asked whether the police had been notified when plaintiff found the post:

> [PLAINTIFF'S COUNSEL]: Judge—
>
> THE COURT: And it's okay, no. I just wanted to know, because this is so alarming.
>
> [PLAINTIFF'S COUNSEL]: Correct. I –
>
> THE COURT: I'm literally frightened right now. Yeah.
>
> [PLAINTIFF'S COUNSEL]: Judge, I happen to agree. I had – without – I believe that this is, not only a violation of the restrain –
>
> THE COURT: He sounds like a family annihilator in this. This is how I'm seeing this. This is so shocking to me, that I need to make sure that the police know and the Division of Child Protection and Permanency. This is absolutely – okay.

The judge then continued to inquire of plaintiff's counsel as to the parties' parenting time. Plaintiff's counsel continued to read the post, questioning plaintiff regarding it:

> Q: So, the first page at the bottom, it says your mother has done a really bad thing. I think we sort of left off, or I said, how does that make you feel? I know it's a stupid question, but can you please answer that?
>
> A: Yeah.

6

THE COURT: She doesn't even have to.

[PLAINTIFF'S COUNSEL]: Okay, fine. I mean, it's –

THE COURT: Yeah.

[PLAINTIFF'S COUNSEL]: Okay. Thank you.

THE COURT: It speaks for itself.

Q: And then the next page, the second paragraph, it says, we will one day pass [Anne's] Law, very simply, if a –

THE COURT: [Counsel], I literally can't even hear anymore of this.

[PLAINTIFF'S COUNSEL]: Fine.

THE COURT: It's – all I want to do is get off the bench and call authorities. Like, this is so concerning to the [c]ourt, I don't know that I've ever seen anything so blatantly concerning in my career. This is – I did not see this coming. I did not know what it said, and I'm absolute – I would have suspended this minute any parenting time until this can be investigated and evaluated. So, we can go to the next thing.

After plaintiff completed her testimony, plaintiff's mother, V.S., testified regarding the alleged false report by defendant to the police regarding V.S. driving the child in the car without a car seat. V.S. denied the allegation.

The judge inquired of defendant if he had any questions by way of cross-examination or if he'd rather "just go to your side of the story . . . ." Defendant

7

opted to "just speak a little bit by myself." Defendant began by explaining an email he sent to plaintiff's counsel, which was sent to court staff as well. The judge responded by admonishing defendant for contacting court staff after being prohibited from doing so. Defendant then declined to read the portion of the exhibit he wanted to address:

> [DEFENDANT]: I don't need to read it. That's fine.
>
> THE COURT: It's fine. I know it[']s fine. Please stop saying, that's fine, because I'm the judge, I've made a point, and I don't need your approval or disapproval. So, don't say, it's fine. Next. What line?
>
> A: I have nothing left over there.
>
> Q: No line? You said you wanted to talk about a line.
>
> A: I don't.
>
> Q: Okay.
>
> A: I rest Your Honor.

At the close of the testimony and summation, the judge granted plaintiff an FRO and suspended defendant's contact with the children until further order of the court. Plaintiff's counsel presented a certification of services in support of plaintiff's request for an award of counsel fees. The judge granted plaintiff an award of counsel fees in the amount of $3,100.

8

On appeal, defendant contends he was deprived of a fair trial because of the judge's apparent bias against him and lack of impartiality. He specifically argues that the judge's behavior, "characterized by improper diagnosis [of mental illness], personal conjecture, and bias" compromised the fairness of the trial.

## II.

We begin by recognizing that domestic violence is a serious and significant problem in our society. N.J.S.A. 2C:25-18; see also J.D. v. M.D.F., 207 N.J. 458, 474 (2011). "[T]here is no such thing as an act of domestic violence that is not serious." Brennan v. Orban, 145 N.J. 282, 298 (1996). We are also mindful that "ordinary due process protections apply in the domestic violence context . . . ." J.D., 207 N.J. at 478. Trial courts must recognize and ensure the protection of those rights to defendants who are facing the serious consequences that flow from the entry of an FRO. Id. at 479; see Bresocnik v. Gallegos, 367 N.J. Super. 178, 181 (App. Div. 2004) (holding that the issuance of an FRO "has serious consequences to the personal and professional lives of those who are found guilty" of domestic violence).

If an FRO is granted, a court must make two findings: (1) plaintiff has proven, by a preponderance of the evidence, that defendant committed one of

A-0949-23

the predicate acts of domestic violence referenced in N.J.S.A. 2C:25-19(a) as alleged in the complaint; and, if the predicate offense is proven, (2) "a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)([7]), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006)).

"The conduct of a trial . . . is within the discretion of the trial court." Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 9 (App. Div. 2003) (citing Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 492 (App. Div. 2000)); see also N.J.R.E 611(b). The court's discretion will not be disturbed "unless there is a clear abuse of discretion which has deprived a party of a fair trial." Ibid. (citing Daisey v. Keene Corp., 268 N.J. Super. 325, 334 (App. Div. 1993)).

Due process encompasses the right to a fair hearing. In re Adoption of Child ex rel. M.E.B., 444 N.J. Super. 83, 88 (App. Div. 2016). An essential component of a fair hearing is "an unbiased tribunal . . . ." Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 164 (1978). Moreover, "[a] judge must conduct a trial in a fair and impartial manner, refraining from remarks that might prejudice a party . . . ." Mercer v. Weyerhaeuser Co., 324 N.J. Super.

290, 297-98 (App. Div. 1999). To this end, a judge must exhibit "at all times . . . patience and understanding" and an impartial demeanor. In re Albano, 75 N.J. 509, 514 (1978).

A review of the record establishes that the judge's conduct and statements demonstrate a lack of impartiality. For example, during plaintiff's direct examination, before defendant had an opportunity to present his case, the judge characterized defendant as a "family annihilator." Further, as the Facebook post was read into the record, the judge expressed her personal fear and unwillingness to "hear anymore." These statements, prior to hearing defendant's testimony, conveyed a lack of impartiality and bias against defendant. The impact of these statements caused defendant to curtail the presentation of his case.

Additionally, as the judge rendered her decision, she referred to the prior TRO over which she presided and stated her "regret" over her prior decision. She also expressed that she was "sick to [her] stomach that [plaintiff] lost [her] job over [her] decision." In reading the Yelp review as she rendered her decision, the judge commented, "[d]isgusting line from a disgusting false, alarming individual." These statements further conveyed a lack of impartiality and the judge's disdain for defendant. Thus, we conclude the judge's conduct

11

resulted in defendant being deprived of a fair and impartial trial, warranting reversal and remand for a new hearing before a different judge.

Finally, as we have consistently stated, "due process . . . requires trial [judges] to apprise domestic violence defendants, in advance of trial, of the serious consequences should an FRO be entered against them." A.A.R. v. J.R.C., 471 N.J. Super. 584, 588 (App. Div. 2022). See also J.D., 207 N.J. at 478 (explaining that "ordinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing that are imposed by the statute") (citations omitted). The record does not demonstrate that defendant was apprised of the serious consequences that may result should an FRO be issued against him, nor of his right to retain an attorney to represent him in the matter. On remand, the trial court shall ensure that defendant is so advised.

In sum, we vacate the FRO and reinstate the TRO. The matter is remanded for a new FRO hearing before a different judge. We express no opinion regarding the outcome of the hearing. However, prior to trial, plaintiff may file an application to amend the complaint to include the allegations of contempt of a domestic violence restraining order. Should plaintiff prevail in obtaining an

12

FRO, she may apply for an award of counsel fees as compensatory damages. N.J.S.A. 2C:25-29(b)(4).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13