589 A.2d 1347

IN THE MATTER OF MICHAEL R. CONNOR, A JUDGE OF THE SUPERIOR COURT.

Submitted November 27, 1990—Decided May 17, 1991.

*Patrick J. Monahan, Jr.,* Counsel for Advisory Committee on Professional Ethics.

*Daryl F. Todd,* attorney for the respondent.

PER CURIAM.

This is a judicial disciplinary proceeding. A formal complaint was filed with the Advisory Committee on Judicial Conduct against the respondent, Michael R. Connor, Judge of the Superior Court. The complaint charged respondent with violations of motor-vehicle laws, namely, driving under the influence of intoxicating liquor, contrary to *N.J.S.A.* 39:4–50; leaving the scene of an accident, contrary to *N.J.S.A.* 39:4–129; and driving in a careless manner, contrary to *N.J.S.A.* 39:4–97. The complaint also charged respondent with making false statements to the investigating police officer in connection with the charged motor-vehicle offenses. Respondent's conduct, according to the complaint, violated several Canons of the Code of Judicial Conduct, as well as Rules of Court. Respondent filed an answer in which he admitted essentially all of the allegations of the complaint and sought to explain his actions.

The Committee conducted a formal hearing on the charges, during which it reviewed all of the evidence, including respondent's conviction based on a guilty plea to the charged offenses and the testimony of respondent and other witnesses. The Committee found by clear and convincing evidence that respondent was guilty of violating the ethical standards set forth in

the Canons and Rules. Finding mitigating circumstances, the Committee recommended that respondent be reprimanded.

## I.

The facts are not disputed. Respondent had been an Atlantic County Superior Court Judge since 1979. On Monday, April 16, 1990, respondent left the Atlantic County Courthouse and drove to his home in Linwood, arriving at approximately 5:00 p.m. There he consumed a significant amount of alcohol and subsequently decided to return some books to the library. While driving in a westerly direction on Ocean Heights Avenue in Egg Harbor Township, he failed to realize that the vehicle ahead of him was slowing down to make a left turn. Respondent attempted to go around that vehicle on the right, but his left front bumper struck the right rear of the vehicle. The respondent left the scene at a high rate of speed, substantially in excess of the fifty miles-per-hour speed limit. He turned right off Ocean Heights Avenue onto English Creek Road and turned right again onto Mill Road. Approximately two miles from the accident scene, respondent lost control of his vehicle, which left the road, struck some trees, and came to a stop in a wooded area.

The vehicle that respondent had struck was being driven by Holly J. Bennett, whose three young children were passengers. After being struck, Ms. Bennett followed respondent, catching up to him after respondent's car came to a final stop off the side of Mill Road. Several police officers soon arrived. Following a brief investigation at the scene, they arrested respondent. He underwent two breathalyzer tests, which produced blood alcohol levels of .17 percent and .16 percent, respectively. Respondent was charged with the motor-vehicle offenses recited in the complaint.

On April 23, 1990, respondent appeared before a Judge of the Superior Court and pled guilty to all of the charges. On the charge of driving while intoxicated, the court sentenced respon-

dent to a seven-month suspension of his drivers license, a fine of $300, and twelve hours attendance at an intoxicated-drivers resource center; on the careless driving charge, the court fined respondent $50; on the charge of leaving the scene of an accident, the court imposed an eight-month drivers-license suspension and a fine of $250. In addition to those sanctions, respondent was required to pay insurance surcharges imposed by the Division of Motor Vehicles.

## II.

We are entitled to give conclusive effect to respondent's convictions. *R.* 1:20–6(b)(1). *In re Coruzzi,* 98 *N.J.* 77, 484 *A.*2d 667 (1984); *see In re Conway,* 107 *N.J.* 168, 526 *A.*2d 658 (1987). In this case, respondent's conviction established his violations of the motor-vehicle laws. We do not view offenses arising from the driving of an automobile while intoxicated with benign indulgence. They are serious and deeply affect the safety and welfare of the public. *E.g., State v. Schreiber,* 122 *N.J.* 579, 585 *A.*2d 945 (1991); *State v. Hamm,* 121 *N.J.* 109, 577 *A.*2d 1259 (1990); *State v. Downie,* 117 *N.J.* 450, 569 *A.*2d 242 (1990); *State v. Tischio,* 107 *N.J.* 504, 527 *A.*2d 388 (1987). They are not victimless offenses. *See Tischio, supra,* 107 *N.J.* 504, 527 *A.*2d 388.

We concur in the determination of the Committee that respondent's convictions establish by clear and convincing evidence his violation of the following *Canons* of the *Code of Judicial Conduct:* Canon 1, which requires a judge to observe high standards of conduct so that the integrity and independence of the judiciary may be preserved; *Canon* 2, which requires a judge to avoid impropriety and the appearance of impropriety in all activities; and *Canon* 2A, which requires a judge to respect and comply with the law and to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. We also concur in the Committee's determination that respondent engaged in conduct that

was prejudicial to the administration of justice and brought the judicial office into disrepute, in violation of *Rule* 2:15–8(a)(6). The Committee stated:

> Respondent's conduct was clearly reprehensible. Judges must observe the highest standards of conduct, in both their professional and personal lives. The offenses committed by Respondent, particularly that of driving while intoxicated, have great societal significance. Though Respondent received the same legal penalties as any other citizen under the circumstances, he violated the law that he swore to uphold. The public good required that a judge act at all times in compliance with the law; for a judge to act otherwise erodes public confidence in the judiciary.

Although in judicial and professional disciplinary proceedings we give conclusive effect to a conviction to establish the occurrence of unethical conduct, we may, and should, examine the surrounding circumstances and underlying facts in determining the nature and extent of discipline. *In re Pleva,* 106 *N.J.* 637, 525 *A.*2d 1104 (1987); *In re Coruzzi, supra,* 98 *N.J.* 77, 484 *A.*2d 667. That examination in this case discloses aggravating circumstances that bear on appropriate discipline. Those aggravating factors affect our consideration of each of the offenses. The drunk-driving offense resulted in an accident with another vehicle. The offenses of leaving the scene and careless driving were particularly egregious. The former, itself a serious offense, bespeaks a denial of responsibility and a disregard for the proper enforcement of the laws. The careless driving entailed not only an accident with another vehicle, endangering its occupants, but a high-speed chase, presenting significant risks to other innocent persons. As serious are the circumstances that followed those offenses. Rather than simply refusing to discuss the incident with the investigating officers following the commission of these offenses—which respondent had the legal right to do, aside from whether it was morally and ethically proper for him to do so—respondent lied about being involved in any accident and, worse, tried to cast blame on the victim.

Respondent's careless driving created hazards well beyond those entailed in the initial collision between his vehicle and Ms.

Bennett's. According to the record, Ms. Bennett gave a statement at the police station, which was admitted into evidence. The statement recited that following the collision, respondent

was going very fast trying to get away from me. He passed 2 cars one on the left and one on the right.... I saw him next, he was on the side of the road and the side of the car was smashed in. It looked like he had skidded quite a bit up the road.

Ms. Bennett also filed a certification with the Committee that was admitted in evidence. That certification was consistent with the statement given to the police, indicating that respondent left the scene, passing cars on the right and left.

Officer Catania, one of the responding officers at the scene, testified at the hearing. His police report, which was admitted in evidence, contained a summary of Ms. Bennett's description of the initial collision and the subsequent chase. The report also contained a description that reconstructed the final accident, indicating that respondent's vehicle had travelled partially off the road for approximately seventy feet and had crossed back and forth over the highway, finally leaving the road and coming to a stop with its right side striking a group of trees.

In addition, respondent's offense of leaving the scene of the accident was itself compounded by conduct that obstructed the investigation of the accident. The police report contained Ms. Bennett's statement that after she caught up to respondent,

I got out of my truck and started yelling at him and he tried to leave. When he couldn't get his car out he got out of the car and walked across the street and talked to the people over there. He then got back into his car a couple minutes later and tried to leave again. (He did get his car out of the dirt). I told him not to leave because the police were coming and he was still going to leave. Then the police came.

In a similar vein, Ms. Bennett certified:

I pulled up along the side of the car. I got out of my truck and went over to the car and began yelling at the driver. The engine was running in the car and the driver ignored me and attempted to drive the car out of the dirt. His windows were up.... I then yelled at the driver that he couldn't leave but it didn't really matter since I had his license plate number.

Ms. Bennett further certified that after the police arrived,

[t]he driver turned off the car and threw his hands up in the air.... The driver then got out of the car and made a statement to the police to my best

recollection: "I don't know what she's going to tell you but she was chasing me and tried to run me off the road."

Officer Catania's police report also noted that respondent "did not wish to give a statement." The report further indicated, however, that when respondent did give a version of the accident on Mill Road, it was that "a vehicle was bearing down on him" and that "he started pulling over to the right to let the other vehicle go by and he lost control of his vehicle." The report also noted that the vehicle sustained damages to the left front portion, but respondent "refused to answer how his vehicle obtained the left front damage or how fast he was traveling when his accident occurred."

Similarly, the testimony of Officer Catania indicated that respondent first denied being involved in an accident with Ms. Bennett, and then gave a false version of the second accident. Officer Catania testified that

[respondent] stated to me there was—he was traveling down Mill Road, a vehicle was bearing down on him very quickly and he was pointing to the blue pickup truck that was parked in front of him. He said he pulled off to the side of the road to let the vehicle go by because he thought it was going to hit him in the rear, and he—when he went on to the shoulder of the road to let the vehicle go by, he lost control of his vehicle and hit the trees.

      \*      \*      \*      \*      \*      \*      \*      \*

I asked the driver, Mr.—Judge Connors [sic], if he had hit the blue pickup truck on Ocean Heights Avenue.
Q  What did he respond?
A  He said, no he did not.

Further, the facts indicate that respondent did not initially cooperate or agree to take a breathalyzer test, insisting first that he receive Miranda warnings. However, he ultimately consented. Following his arrest and the breathalyzer tests, respondent was released in the custody of his wife. Later that evening, respondent visited Assignment Judge Richard J. Williams at his home and reported what had occurred.

Notwithstanding respondent's egregious conduct at the time of the incident, there are significant mitigating factors in connection with this episode. On the day following the accidents

and arrest, respondent called Ms. Bennett to inquire about her condition and that of the passengers in her vehicle. He apologized to Ms. Bennett for the accident and offered to pay for any damages that she had incurred. Next, he wrote a series of letters to Atlantic County judges explaining what he had been charged with, admitting guilt to all the charges, and apologizing for the incident. Respondent then called Seabrook House, a clinic specializing in the treatment of substance abuse, and scheduled an interview for that day. The respondent had an interview with a counsellor from Seabrook House who recommended an inpatient treatment program. Recognizing the extent of his drinking problem, respondent decided to enroll in a thirty-day residential treatment program. Later that day, respondent prepared and released to the press a written statement acknowledging responsibility for his actions and offering a general apology.

Immediately after the court hearing, respondent entered Seabrook House for a thirty-day residential treatment program. Following his release from Seabrook House, respondent enrolled in a prescribed outpatient program, consisting of weekly group-therapy sessions run by a counsellor and individual counselling sessions with a therapist. Additionally, respondent followed a recommended course of three meetings per week at Alcoholics Anonymous. He also has a sponsor, an attorney with whom he speaks at least once each week.

The Committee properly considered all of the mitigating circumstances following respondent's arrest. It also fairly accepted and emphasized respondent's explanation of his conduct immediately following the accidents, namely, that respondent's behavior was attributable to panic, confusion, and fear of embarrassment. Accordingly, the Committee recommended that respondent be reprimanded, but receive "less than a suspension or removal from judicial office because of the above related circumstances." It noted that:

The Respondent has explained that his conduct was the product of his problem with alcohol. However, there is no evidence that Respondent's drink-

ing problem impaired his judicial performance. To the contrary, Respondent has enjoyed an otherwise unblemished judicial career. A number of attorneys submitted written statements expressing the highest regard for Respondent, both as a judge and a person. The Committee has also taken into account Respondent's acknowledgement of his problem, albeit too late to prevent the underlying accident, and his voluntary admission into an intensive treatment program. Respondent has assured the Committee that he intends to continue his treatment; he acknowledges a lifelong commitment to abstention from any consumption of alcoholic beverages.

The Committee gave appropriate weight to "[respondent's] past judicial record, the fact that the condition was not directly related to his judicial functions, the aberrational nature of the conduct, his recognition of his alcohol problem, and the remedy he is following," determining that respondent "be required to continue his participation in counselling and that his participation be monitored periodically and accompanied by reports to the Supreme Court."

We acknowledge and give the same weight to most of the mitigating circumstances that influenced the Committee to impose lenient discipline—respondent's acknowledgment of guilt, his contrition, his public apology, his genuine self-confrontation and commitment to rehabilitation, the absence of a prior record of misconduct, and his exemplary personal and professional reputation. Other alleged mitigating factors, however, are not entitled to the weight assigned by the Committee. Although respondent did not, to his credit, attempt to take advantage of his judicial office, the police on the scene quickly learned he was a judge, albeit nothing more was made of that. Further, while the post-accident events involving the on-the-scene investigations moved swiftly, it does not appear that respondent's cooperation was immediately forthcoming. Respondent did not completely respond to police inquiries concerning the accident, giving evasive or false answers.

Moreover, we cannot overemphasize several aggravating factors. Aside from the gravity *per se* of the motor vehicle violations, the drunk driving offense resulted in an accident involving innocent people; the offense of leaving the scene of

the accident not only served to interfere with proper law enforcement but placed the victims of the accident potentially in greater jeopardy; and the careless driving offense clearly posed added dangers to other innocent persons. Further, respondent engaged in other deleterious conduct. When confronted after the final accident, he attempted to leave the scene; he did not respond initially to the investigating officers; and when he did respond, he denied being involved in a prior accident and blamed the victim for the incident.

We have felt in other cases involving judicial misconduct that a public reprimand is fitting disciplinary action with respect to drunk driving and possibly a derivative driving offense. In each of those cases, the judge had no prior record of personal, professional, or judicial misconduct, possessed a well-deserved judicial reputation of excellence, and most importantly, was sincerely contrite and genuinely determined to achieve sobriety and rehabilitation. Those factors redound as well to respondent.

That portrait, however, does not fully depict respondent. The regrettable post-accident circumstances that aggravated the situation were understandably, although not excusably, the result of common human failings: panic, confusion, and overwhelming mortification. They were not the by-product of an evil or antisocial mindset. Nevertheless, discipline in this case calls for more than the sanction found appropriate in other cases because the ethical transgressions in their totality are more serious. Respondent's offenses went beyond drunk driving, posing an actual serious risk to the safety of others, as well as to the proper and effective administration of important laws affecting public safety.

Accordingly, we order that respondent be censured. We determine that this form of discipline denotes a harsher sanction than a reprimand and reflects the more egregious character of the underlying misconduct than that surrounding the misdeeds of other judges heretofore charged with comparable

motor-vehicle violations. The censure that we here impose stands in order of severity between a reprimand and formal suspension of the exercise of judicial duties or removal from judicial office. *See In re Albano*, 75 *N.J.* 509, 384 *A.*2d 144 (1978). We decline under the circumstances to impose on respondent a suspension from judicial service. That, we believe, is contraindicated because of his good record as a judge and because his transgressions do not directly affect the performance of his judicial duties. We further impose additional sanctions: respondent shall be required to continue to participate actively in rehabilitative programs, and shall be disqualified from presiding over any cases involving drunk driving until his rehabilitation becomes secure.

So ordered.

CLIFFORD, J., not participating.

*For censure* —Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed* —None.

## ORDER

The Advisory Committee on Judicial Conduct having submitted a presentment to the Court recommending that JUDGE MICHAEL R. CONNOR be publicly reprimanded, and the Court having considered the record in the matter, and good cause appearing;

It is ORDERED that JUDGE MICHAEL R. CONNOR be and hereby is censured; and it is further

ORDERED that respondent shall continue to participate actively in rehabilitative programs and that he shall be disqualified from presiding over cases involving driving while intoxicated, until the further Order of this Court.