667 A.2d 684

STATE OF NEW JERSEY, DEPARTMENT OF LAW & PUBLIC SAFETY, DIVISION OF GAMING ENFORCEMENT, COMPLAINANT–RESPONDENT, v. ADRIEL GONZALEZ, RESPONDENT.

Argued September 12, 1995—Decided December 5, 1995.

622

*Steven M. Ingis,* Assistant General Counsel, argued the cause for appellant New Jersey Casino Control Commission (*John R. Zimmerman,* General Counsel, attorney).

*Gary A. Ehrlich,* Deputy Attorney General, argued the cause for respondent State of New Jersey, Department of Law & Public Safety, Division of Gaming Enforcement (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Frank Catania,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

COLEMAN, J.

The question raised in this case is whether the Casino Control Commission (Commission), while exercising its regulatory responsibilities in determining whether to revoke the license of a casino employee based on his guilty pleas to two third-degree criminal offenses, should be permitted to relitigate the facts underlying the criminal convictions.

A majority of the members of the Commission concluded that guilty pleas are merely voidable admissions that can be repudiated in a license revocation proceeding. The Division of Gaming Enforcement (Division) appealed, and a majority in the Appellate Division held that a casino employee may not challenge his or her conviction in the administrative revocation proceedings. *State v. Gonzalez,* 273 *N.J.Super.* 239, 247, 641 *A.*2d 1060 (1994). The Commission filed this appeal on the basis of the dissent in the Appellate Division. *R.* 2:2–1(a)(2). We hold that because of the strong public policy of maintaining integrity in the casino industry, a casino employee may not present evidence contradicting his or her convictions. The casino employee may present evidence to support a claim of rehabilitation, but that evidence must not be inconsistent with the elements of the criminal offenses to which guilty pleas have been entered.

### I

The casino industry in New Jersey is subject to a two-tiered regulatory system. The Commission is the quasi-judicial licensing body. *N.J.S.A.* 5:12–63. The Division is the investigatory and prosecutorial body. *N.J.S.A.* 5:12–76.

The Commission issued Adriel Gonzalez a casino-employee license pursuant to the Casino Control Act (Act). *N.J.S.A.* 5:12–7. That license permitted him to be employed by the Sands Hotel and Casino as a security officer. *N.J.S.A.* 5:12–90(f). While holding that license, Gonzalez was indicted on September 5, 1990, for possession of and conspiracy to distribute marijuana, possession with intent to distribute and distribution of marijuana to an undercover agent in a school zone, all occurring on March 14, 1990, in violation of the Comprehensive Drug Reform Act of 1987, *N.J.S.A.* 2C:35–5 and –7 and *N.J.S.A.* 2C:5–2. On October 22, 1990, Gonzalez entered pleas of guilty to conspiracy to distribute marijuana contrary to *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:35–5b(3), and possession of marijuana with intent to distribute within 1,000 feet of a school in Hammonton Township, a violation of *N.J.S.A.* 2C:35–7. He was sentenced on November 30, 1990, to a term of probation, and as a condition of probation, he was required to serve thirty days in the Atlantic County Jail.

Based on the judgment of conviction,[1] the Division filed a complaint with the Commission on September 17, 1991, seeking disqualification of Gonzalez's casino-employee license. A hearing was conducted on the complaint in April 1992 before one of the commissioners sitting as a hearing examiner. During that hearing, "Gonzalez testified [under oath], in response to the hearing examiner's questions, that despite his entry of a plea of guilty on

---

[1] In 1990, possession of marijuana with intent to distribute in a school zone was not an offense enumerated in the Act that would mandatorily disqualify Gonzalez from holding a casino-employee license. *See N.J.S.A.* 5:12–86c(1). It was added as such an offense by *L.* 1991, *c.* 182, § 27, effective June 29, 1991. No claim has been made with regard to whether the school zone conviction can retroactively become a disqualifying offense.

two of the counts of the indictment, he in fact did not commit the offenses charged." *State v. Gonzalez, supra,* 273 *N.J.Super.* at 241, 641 *A.*2d 1060.

In June 1992 the hearing examiner issued an initial decision revoking Gonzalez's license. The full Commission, however, remanded the case to the hearing examiner for further proceedings. During the second hearing, conducted in September 1992, the hearing examiner again allowed Gonzalez to testify, over the Division's strenuous objections, that

> he was not guilty of these offenses. The examiner ultimately concluded that Gonzalez's denial was more credible than the testimony of the arresting officer whom the Division felt compelled to bring in to meet Gonzalez's testimony. The examiner accepted the testimony of Gonzalez that he entered a false plea of guilty "because he could not afford to have a private attorney represent him in court and because he wanted to get the matter over with as quickly as possible." She concluded that Gonzalez had been rehabilitated pursuant to *N.J.S.A.* 5:12–90(h), and possessed the "good character, honesty and integrity" required under *N.J.S.A.* 5:12–89(b)(2) and –90(b) to retain his casino employee license. The Commission, Chairman Perskie dissenting, adopted her determination.
>
> [*Id.* at 242, 641 *A.*2d 1060.]

The Appellate Division reversed based on the doctrines of issue preclusion and judicial estoppel. *Id.* at 247–49, 641 *A.*2d 1060. One member of the panel dissented, stating that because issue preclusion is an equitable doctrine, the Commission should have discretion in determining whether to give preclusive effect to a prior judicial determination absent a contrary legislative intent. *Id.* at 252, 641 *A.*2d 1060.

## II

The Commission argues that it is vested with the discretion in an administrative, license revocation hearing not to apply the doctrines of issue preclusion and judicial estoppel to preclude evidence contradicting a guilty plea.

There are three basic categories of casino employees: non-key employees, *N.J.S.A.* 5:12–7; hotel employees, *N.J.S.A.* 5:12–8; and key employees, *N.J.S.A.* 5:12–9. Each casino employee must hold a valid employee license. *N.J.S.A.* 5:12–90a. That license

may be revoked if the employee is convicted of a disqualifying offense, *N.J.S.A.* 5:12–86c(1), and has not been rehabilitated. *N.J.S.A.* 5:12–90h. The hearing in this case was required to permit the Commission to determine whether Gonzalez, by virtue of his convictions on two disqualifying offenses enumerated in *N.J.S.A.* 5:12–86c(1), should continue to hold a casino-employee license. In the course of that hearing, to avoid license revocation pursuant to *N.J.S.A.* 5:12–129(1), Gonzalez was required to establish by clear and convincing evidence, *N.J.S.A.* 5:12–89b(2), that he had been rehabilitated within the meaning of *N.J.S.A.* 5:12–90h.

The Commission also contends that relitigating the facts is warranted because one of the eight factors required to be considered on the issue of rehabilitation includes "the circumstances under which the offense or conduct occurred." *N.J.S.A.* 5:12–90h(3).

### III

#### A

When determining whether a convicted casino employee has been rehabilitated, the Commission must consider the following criteria:

(1) The nature and duties of the position applied for;

(2) The nature and seriousness of the offense or conduct;

(3) The circumstances under which the offense or conduct occurred;

(4) The date of the offense or conduct;

(5) The age of the applicant when the offense or conduct was committed;

(6) Whether the offense or conduct was an isolated or repeated incident;

(7) Any social conditions which may have contributed to the offense or conduct;

(8) Any evidence of rehabilitation, including good conduct in prison or in the community, counseling or psychiatric treatment received, acquisition of additional academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of persons who have or have had the applicant under their supervision.

[*N.J.S.A.* 5:12–90h.]

The Legislature did not articulate the types of evidence that are relevant to "rehabilitation" when it added paragraph h to subsec-

tion 90 in 1980. *See L.* 1979, *c.* 282, § 25. Nor did it address that issue in 1988 when it amended that subsection. The Commission argues that, "[a]lthough the Legislature accorded preclusive effect in section 86c to a prior conviction in terms of finding that a disqualifying offense was committed, the Act does not similarly preclude a party seeking to demonstrate rehabilitation pursuant to subsection 90h from presenting evidence that negates one of the elements of the disqualifying offense to which he has pled guilty."

## B

■ This appeal requires us to focus on the way in which the Commission exercised its adjudicatory responsibilities in determining whether Gonzalez had been rehabilitated. The judicial capacity to review that administrative action is limited. *Gloucester County Welfare Bd. v. New Jersey Civil Serv. Comm'n*, 93 *N.J.* 384, 390, 461 *A.2d* 575 (1983). As this Court has observed:

[T]he judicial role is restricted to three inquiries: (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors. *Campbell v. Department of Civil Serv.*, 39 *N.J.* 556, 562 [189 *A.2d* 712] (1963); *see also Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80 [410 *A.2d* 686] (1980).

[*Public Serv. Elec. & Gas Co. v. New Jersey Dep't of Envtl. Prot.*, 101 *N.J.* 95, 103, 501 *A.2d* 125 (1985).]

Here, our review of the Commission's decision is restricted to whether its action violates the Act's express or implied legislative policies.

■ To answer that question, we must interpret the Act. We have emphasized repeatedly that when interpreting a statute, our overriding goal must be to determine the Legislature's intent. *See Young v. Schering Corp.*, 141 *N.J.* 16, 25, 660 *A.2d* 1153 (1995); *Roig v. Kelsey*, 135 *N.J.* 500, 515, 641 *A.2d* 248 (1994); *Jacobitti v. Jacobitti*, 135 *N.J.* 571, 579, 641 *A.2d* 535 (1994); *Lesniak v. Budzash*, 133 *N.J.* 1, 8, 626 *A.2d* 1073 (1993). The Court should interpret a statute in a way that advances "the sense and meaning

fairly deducible from the context." *Id.* at 14, 626 *A.*2d 1073. The doctrine of probable legislative intent is a reliable guide in this case. *State v. Haliski,* 140 *N.J.* 1, 16, 656 *A.*2d 1246 (1995); *Amerada Hess Corp. v. Director, Div. of Tax.,* 107 *N.J.* 307, 322, 526 *A.*2d 1029 (1987), *aff'd,* 490 *U.S.* 66, 109 *S.Ct.* 1617, 104 *L.Ed.*2d 58 (1989).

We begin our interpretation of the Act with the legislative findings. The findings articulate that the cornerstone of the legislative plan to regulate casino gambling in Atlantic City is "public confidence and trust in the credibility and integrity of the regulatory process" by the State. *N.J.S.A.* 5:12–1b(6); *see also N.J.S.A.* 5:12–1b(13). The methodology for establishing and maintaining the public confidence is the regulatory process that is "designed to extend strict State regulation to all persons, locations, practices and associations related to the operation of licensed casino enterprises." *N.J.S.A.* 5:12–1b(6). The legislative findings also make clear that the most effective way of maintaining the integrity of the casino industry in Atlantic City is "the exclusion from participation therein of persons with known criminal records, habits or associations." *N.J.S.A.* 5:12–1b(7). That policy applies with equal force to casino operators and employees alike. So strong is the legislative expression of public policy that a license issued under the Act is "deemed a revocable privilege conditioned upon the proper and continued qualification of the individual licensee." *N.J.S.A.* 5:12–1b(8).

The legislative findings in the Act represent a policy choice, which is simply "a course of action consciously chosen among various alternatives." *City of Oklahoma City v. Tuttle,* 471 *U.S.* 808, 823, 105 *S.Ct.* 2427, 2436, 85 *L.Ed.*2d 791, 804 (1985). Casino gambling represents "an exception to the general constitutional prohibition against gambling, *N.J. Const.* (1947) art. 4, § 7, para. 2." *Greenberg v. Kimmelman,* 99 *N.J.* 552, 560, 494 *A.*2d 294 (1985). Because of the casino industry's susceptibility to inherent evils, "the very heart of the public policy embraced by the [Act] is 'the public confidence and trust in the credibility and

integrity of the regulatory process and casino operations.'" *Knight v. Margate,* 86 *N.J.* 374, 381, 431 *A.*2d 833 (1981). To achieve that objective, the "controls over casino operations established by the Act are extraordinary, pervasive and intensive." *Id.* at 380–81, 431 *A.*2d 833. We have consistently recognized a strong State interest in promoting scrupulous conduct by casino employees, *Greenberg v. Kimmelman, supra,* 99 *N.J.* at 560, 494 *A.*2d 294, and highly regulating the only gambling permitted. *In re Martin,* 90 *N.J.* 295, 319, 447 *A.*2d 1290 (1982).

 Notwithstanding this tight regulatory scheme, we recognize that the Commission has legislatively defined discretion in implementing the Act. *See In re Solid Waste Util. Cust. Lists,* 106 *N.J.* 508, 519–20, 524 *A.*2d 386 (1987). This discretion, however, may not be exercised in a way that violates the Act's public policy. In exercising its discretion, "the Commission must be ever mindful that the gaming industry is to be insulated from criminals so that its integrity may be maintained." *New Jersey Dep't of Law and Pub. Safety v. Hannah,* 221 *N.J.Super.* 98, 102, 534 *A.*2d 18 (App.Div.1987). The procedure that the Commission utilized below undermines the Act's underlying policy: to maintain integrity within the casino industry.

 It is beyond dispute that in a trial involving a cause of action based on tort or contract, a party's guilty plea may be used as affirmative, substantive evidence against that party. *Eaton v. Eaton,* 119 *N.J.* 628, 643, 575 *A.*2d 858 (1990); *Stoelting v. Hauck,* 32 *N.J.* 87, 106, 159 *A.*2d 385 (1960). In such civil proceedings, the guilty plea is introduced into evidence as an admission, but it does not constitute conclusive proof of the facts underlying the offense. *Eaton, supra,* 119 *N.J.* at 644, 575 *A.*2d 858. In that context, "the party who has entered the plea may rebut or otherwise explain the circumstances surrounding the admission." *Ibid.* (citations omitted). Consequently, the doctrine of issue preclusion does not prevent the pleading party in the trial of a tort or contract claim from contesting the admitted facts. However, to apply the same rationale to a casino employee revocation proceeding and permit

repudiation of the facts underlying criminal convictions based on guilty pleas would be inimical to the policies that underlie the Act.

## C

 For still another reason, the policy of maintaining the integrity of the casino industry would be ill-served by permitting Gonzalez to repudiate his guilty pleas. He entered his guilty pleas under oath pursuant to *Rule* 3:9–2. Under that rule, the judge was required to reject any plea unless the judge was satisfied that Gonzalez gave a "factual basis for the plea and that the plea [was] made voluntarily, [and] not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea." *R.* 3:9–2. There is not as much as a hint that Gonzalez's guilty pleas failed to conform to the requirements of *Rule* 3:9–2. Nor is there any suggestion that Gonzalez ever sought to vacate his guilty pleas. Because a guilty plea leading to a judgment of conviction has the force of an admission of guilt on the charge based on a defendant's sworn factual statement, we are persuaded that the Act, when considered as a whole, does not permit a casino licensee to repudiate his or her guilty plea in an attempt to establish rehabilitation pursuant to *N.J.S.A.* 5:12–90h.

 It is unthinkable that the Legislature would intend that judgments of conviction should be treated differently depending on whether they resulted from guilty pleas or trials. A hypothetical example can best illustrate the point. A.B. and C.D. are both indicted for possession of a controlled dangerous substance with intent to distribute in a school zone. A.B. pleads guilty, but C.D. elects to be tried, and at his trial, testifies that he did not commit the offense. The jury nonetheless finds C.D. guilty. Even though both defendants are convicted of the same offense, the Commission would treat the convictions differently in a license revocation proceeding. A.B., who admitted his guilt in the plea, would be allowed to deny his guilt before the Commission. C.D., who has maintained his innocence throughout, however, would not be al-

lowed to continue to assert his innocence before the Commission. Thus, the Commission punishes the casino employee who elects to stand trial on a disqualifying offense.

The business of casino gambling is interrelated with what the public believes to be the integrity of the industry. In this case, the Commission's decision to allow repudiation of guilty pleas in an effort to establish rehabilitation will reasonably lead to a loss of public confidence in casino gambling and the judiciary as well.

It is clear under the Act that a casino employee, convicted of a disqualifying offense based on a guilty plea, has a right to testify in a revocation hearing to support a claim of rehabilitation pursuant to subsection 90h. It is elementary, however, that such an employee's right to testify does not extend to testifying falsely. The legislative recognition that some convicted criminals may be rehabilitated cannot be perverted into a license to use perjurious testimony in an attempt to demonstrate rehabilitation. Given the proper policies involved and the clear legislative intent to bar criminals from the casino industry, a hearing before the Commission is the last place in this State where those duly convicted should be allowed to claim they are innocent.

## D

A comparison to an attorney disciplinary proceeding is useful because, like a casino employee license revocation hearing, its underlying purpose is to protect the public. In attorney disciplinary proceedings, a criminal conviction is conclusive proof of guilt. *R.* 1:20–13(c)(1); *In re Connor,* 124 *N.J.* 18, 21, 589 *A.*2d 1347 (1991) (involving a guilty plea to driving while intoxicated); *In re Mirabelli,* 79 *N.J.* 597, 602, 401 *A.*2d 1090 (1979) (involving a guilty plea to bribery). Although the underlying facts of the conviction may be examined with respect to mitigation of penalty, "the fact of guilt will not be retried." *In re Rosen,* 88 *N.J.* 1, 3, 438 *A.*2d 316 (1981). In view of the common goals shared by casino employee revocation proceedings and attorney disciplinary proceedings, we conclude that the effect of a guilty plea should be the same for both.

In addition, we are persuaded to reach the same conclusion based on the doctrine of judicial estoppel. This doctrine "bar[s] a party to a legal proceeding from arguing a position inconsistent with one previously asserted." *N.M. v. J.G.*, 255 *N.J.Super.* 423, 429, 605 *A.2d* 709 (App.Div.1992) (citations omitted); *Levin v. Robinson, Wayne & La Sala*, 246 *N.J.Super.* 167, 178–79, 586 *A.2d* 1348 (Law Div.1990). When Gonzalez entered his guilty pleas, he swore that he conspired to possess and distribute marijuana and that he possessed marijuana with the intent to distribute it within a school zone. His subsequent attempt to change his testimony at the license revocation hearing indicates that he was playing fast and loose with the courts and the casino regulators. The Act does not tolerate such conduct. He benefitted from his guilty pleas by receiving a lenient sentence. After completing the probationary sentence, he then denied his guilt in the license revocation proceeding in an attempt to show not only that he was rehabilitated, but that he had not committed a disqualifying offense. Thus, Gonzalez "had his cake and he ate it too." *Duplan Corp. v. Deering Milliken, Inc.*, 397 *F.Supp.* 1146, 1177 (D.S.C.1974). Judicial estoppel protects the integrity of both the judicial process and the casino industry when the Commission acts in its quasi-judicial capacity.

## IV

We find equally unconvincing the Commission's contention that because the Legislature, in the Act's anti-racketeering provision, expressly precluded relitigation of "the essential allegations of the criminal offense," *N.J.S.A.* 5:12–127(d), it did not intend to preclude relitigation of the facts underlying judgments of conviction based on guilty pleas when deciding whether the applicant was rehabilitated under *N.J.S.A.* 5:12–90h. Such a reading is not in keeping with the spirit of the Act. The Act must be read sensibly in view of its overall legislative scheme. It was the Legislature's purpose to prevent criminals from gaining a foothold in the casino industry. Moreover, it is the internal sense of the

Act that controls. *Loboda v. Township of Clark,* 40 *N.J.* 424, 435, 193 *A.*2d 97 (1963). Isolated expressions may not be invoked to defeat a reasonable construction of the Act. *Giles v. Gassert,* 23 *N.J.* 22, 33–34, 127 *A.*2d 161 (1956).

■ We also ascribe significance to the fact that after the Appellate Division opinion in this case was published, the Legislature reenacted subsection 90h on January 25, 1995, without change. *L.* 1995, *c.* 18, § 28. The failure of the Legislature to amend subsection 90h in its recent legislation further supports the Appellate Division's decision. *See Massachusetts Mut. Life Ins. Co. v. Manzo,* 122 *N.J.* 104, 116, 584 *A.*2d 190 (1991); *Lemke v. Bailey,* 41 *N.J.* 295, 301, 196 *A.*2d 523 (1963). We conceive of no common-sense reason why our Legislature would intend to permit relitigation of the elements of a criminal conviction for any purpose under the Act.

We hold that under the Act, a judgment of conviction may not be collaterally attacked in an employee license revocation proceeding. The Legislature intended to give preclusive effect to judgments of conviction to achieve the Act's underlying intent. No distinction under the Act is to be made between convictions based on pleas of guilty and those based on litigated verdicts. Irrespective of the motives that may have impelled Gonzalez to enter the guilty pleas, convictions based thereon that have not been vacated by a court of competent jurisdiction stand as *conclusive* evidence of guilt for all purposes under the Act. Facts that relate to the surrounding circumstances of the offense may be presented, however, in an employee license revocation proceeding to support a claim of rehabilitation, so long as that evidence is not inconsistent with the elements of the disqualifying offense.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.