

2003 Decisions

12-18-2003

# JB Hunt Transp Inc v. USF Distribution Ser

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3827

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"JB Hunt Transp Inc v. USF Distribution Ser" (2003). *2003 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3827
_____

J.B. HUNT TRANSPORT, INC.

v.

USF DISTRIBUTION SERVICES; USF LOGISTICS

                                             Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 01-CV-3448
District Judge: Honorable Ronald L. Buckwalter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 12, 2003
_____

Before: AMBRO, FUENTES, and GARTH, Circuit Judges

(Opinion File   December 18, 2003)
_____

OPINION
_____

Garth, <u>Circuit</u> <u>Judge</u>:

The Appellants, USF Distribution Services and USF Logistics (collectively "USF"), filed a timely appeal from the District Court's grant of summary judgment in favor of the Appellee, J.B. Hunt Transport, Inc. ("J.B. Hunt"). Jurisdiction is based on diversity jurisdiction. 28 U.S.C. § 1332. We have jurisdiction of the appeal pursuant to 28 U.S.C. § 1291. Our review is plenary. We will affirm.

I.

J.B. Hunt is a commercial motor carrier which contracted with Home Depot to transport cargo from time to time. USF, which is in the business of operating distribution centers, was selected to service Home Depot stores in the Mid-Atlantic states through a USF distribution facility in Philadelphia. There was no contract between J.B. Hunt and USF.

Pursuant to its contract with Home Depot, J.B. Hunt was required to carry extensive insurance including automobile liability insurance in an amount not less than $5,000,000 per occurrence. To meet those requirements, J.B. Hunt was certified by the United States Department of Transportation as a self-insurer for the first $1,000,000. It contracted for the remainder of its insurance with National Union Fire Insurance Company of Pittsburgh.

In October 1999, USF loaded Home Depot cargo from its distribution center in Philadelphia onto a J.B. Hunt tractor-trailer. J.B. Hunt asserts that the tractor-trailer was

registered in Oklahoma, but "principally garaged" in Pennsylvania. J.B. Hunt transported the cargo to two Home Depot stores in New Jersey. A Home Depot employee by the name of Herman Moller was injured while unloading freight from the tractor-trailer at one of those stores. Moller filed a personal injury lawsuit against both J.B. Hunt and USF in New Jersey state court alleging that USF had negligently loaded the cargo onto the tractor-trailer and that J.B. Hunt had negligently operated the vehicle.

USF tendered its defense of the Moller lawsuit to J.B. Hunt. USF took the position that it had been a "permissive user" of the tractor-trailer when it loaded the cargo and therefore J.B. Hunt, as the owner of the tractor-trailer, was solely responsible for Moller's injuries and was required to both defend and indemnify USF.

J.B. Hunt disagreed with USF and it filed the instant lawsuit in federal court seeking a declaration that it was not legally required to defend or indemnify USF. USF counterclaimed seeking its own declaration that J.B. Hunt owed it complete indemnification against any and all expenses and liabilities arising from the Moller lawsuit. Both parties moved for summary judgment.

In September 2002, the District Court granted summary judgment for J.B. Hunt. The District Court found that "nothing in the federal motor carrier requirements, J.B. Hunt's ICC certification as a self-insurer, New Jersey law, or existing private contracts

alter any party's rights or duties of contribution." With respect to New Jersey law,[1] the court explained that if J.B. Hunt either (a) maintained primary automobile insurance coverage with an insurance carrier licensed to do business in New Jersey; or (b) was self-insured and had applied for a certificate of self-insurance from New Jersey's Commissioner, then it would be obligated to defend and indemnify USF for Moller's claims. The District Court found, however, that J.B. Hunt fell into neither of those categories because, although it was a self-insured carrier, it had not applied for a certificate of self-insurance from New Jersey's Commissioner of Insurance.[2]

New Jersey also has a so-called "deemer" statute, which requires insurers authorized to transact motor vehicle insurance business in New Jersey to include in their policies sold in other states as much coverage as would be required of policies sold in New Jersey. *See* N.J. Stat. Ann. § 17:28-1.4. Because policies sold in New Jersey would normally cover third-parties in USF's position (i.e., a permissive user who loads cargo onto a motor vehicle), USF argued that it was covered by J.B. Hunt's self-insured policy. The District Court disagreed, however, because it read the deemer statute to apply only to insurers authorized to transact automobile or motor vehicle insurance business in New

---

[1] Because the parties implicitly agree that New Jersey law applies to this dispute and since New Jersey has a substantial interest in apportioning liability in motor vehicle accidents, we will not revisit the District Court's decision to apply New Jersey law. *See Schiavone Constr. Co. v. Time, Inc.,* 735 F.2d 94, 96 (3d Cir. 1984).

[2] USF does not argue that J.B. Hunt should have obtained a New Jersey certificate. (*See* USF Reply Brief at 3 n.1.)

Jersey, thus excluding self-insured motor carriers such as J.B. Hunt.

Three months after the District Court made its ruling, USF entered into a consent judgment in favor of Moller in the underlying lawsuit in the amount of $675,000. Several months later, J.B. Hunt reached a settlement with Moller in the same amount.

II.

USF argues on appeal that J.B. Hunt has exposed a gap in New Jersey's motor vehicle insurance scheme by self-insuring (but not certifying in New Jersey) a tractor-trailer that was both registered and principally garaged outside of New Jersey. We should, according to USF, rely on New Jersey's common law to "fill the gap" in the statutes by holding that all self-insureds, regardless of whether they obtained a certificate of self-insurance in New Jersey, have a duty to defend and indemnify permissive users of their vehicles.

We decline USF's invitation to fill the purported gap in New Jersey's statutes. Under New Jersey law, the principal goal of statutory interpretation is to determine the Legislature's intent. *State v. Gonzalez,* 667 A.2d 684, 689 (N.J. 1995). The "clearest indication of that intent" is always the statute's plain language. *Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety,* 575 A.2d 1348, 1353 (N.J. 1990). "If the statute is clear and unambiguous on its face and admits of only one interpretation," there is no need to delve "deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler,* 445 A.2d 399, 402 (N.J. 1982).

We are of the opinion that the plain language of the New Jersey insurance statutes answers the question of whether J.B. Hunt was required to defend and indemnify USF in the Moller lawsuit. New Jersey's Compulsory Automobile Insurance Law applies only to motor vehicles registered or principally garaged in New Jersey. *See* N.J. Stat. Ann. § 39:6B-1. Accordingly, that statute, by its plain terms, does not apply to J.B. Hunt because, as stated, J.B. Hunt asserts and USF does not deny that the tractor-trailer in question was registered in Oklahoma and principally garaged in Pennsylvania. Similarly, New Jersey's self-insured statute does not apply because J.B. Hunt obtained its certificate of self-insurance from the federal government, not the State of New Jersey. *See* N.J. Stat. Ann. § 39:6-52. Lastly, New Jersey's deemer statute does not apply because J.B. Hunt is not an insurer authorized to transact business in New Jersey. *See* N.J. Stat. Ann. § 17:28-1.4. Because these statutes state in clear and unmistakable terms the scope of their coverage, and since we read the relevant New Jersey statutes and decisional law as pertaining to only those vehicles registered or principally garaged in New Jersey, we will not resort to extrinsic matters such as the statutes' remedial purposes or New Jersey's common law to expand their reach. *See Bergen Commercial Bank v. Sisler,* 723 A.2d 944, 950 (N.J. 1999).

USF also argues that we should rely on New Jersey's common law to interpret the word "use," as that term is employed in a federal statute requiring motor carriers to have sufficient insurance coverage to pay final judgments entered against them resulting from,

among other things, the negligent "use" of their motor vehicles. *See* 49 U.S.C. § 13906. We are not persuaded to do so because the New Jersey cases relied on by USF are cases which have interpreted New Jersey's insurance statutes and not the altogether different federal legislation.

We are satisfied that Judge Buckwalter's analysis and conclusion are correct and therefore we will affirm the judgment of the District Court.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Leonard I. Garth, Circuit Judge