Eric WINFREY, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 88825.

Supreme Court of Missouri,
En Banc.

Jan. 15, 2008.

Jessica M. Hathaway, Office of Public Defender, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jaime Wilson Corman, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

1. All statutory citations are to RSMo 2000.

2. "A court will avoid the decision of a constitutional question if the case can be fully determined without reaching it." *State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n,* 687 S.W.2d 162, 165 (Mo. banc 1985). This

RICHARD B. TEITELMAN, Judge.

Has a person taken "money or anything of value in or from the gambling games" in violation of section 313.830.4(9) RSMo 2000 [1], if that person purchases casino chips and then fraudulently exchanges those chips for a cash payment in excess of the face value of the casino chips? Such conduct does not constitute a violation of section 313.830.4(9). Therefore, the circuit court clearly erred in overruling Eric Winfrey's motion to set aside his plea of guilty to violating section 313.830.4(9). The judgment is reversed.

### FACTS

Eric Winfrey pled guilty to one count of tampering in the first degree and one count of attempt to commit a prohibited act on a gambling boat, section 313.380.4(9). At his plea hearing, Winfrey admitted that he purchased $180 of casino chips and, with assistance of a cashier at the casino, exchanged the chips for $595 in cash. Winfrey admitted that his intent was to defraud the casino. At no point in the plea hearing was it established that Winfrey ever participated in any way in any gambling game in furtherance of his effort to defraud the casino. The circuit court accepted Winfrey's guilty plea.

■ Winfrey timely filed a Rule 24.035 motion to set aside his plea of guilty to violating section 313.830.4(9). Winfrey argued that there was an insufficient factual basis for the plea because none of the conduct to which he pleaded occurred "in or from the gambling games" as required to sustain a conviction under the statute. Alternatively, Winfrey claimed that the statute was unconstitutionally vague.[2] The

Court's conclusion that there was no factual basis for Winfrey's guilty plea to violating section 313.830.4(9) fully resolves the appeal and eliminates the need to address Winfrey's constitutional challenge to the statute.

circuit court overruled Winfrey's motion. The court reasoned that casino chips are an integral part of gambling and that Winfrey's purchase and fraudulent redemption of the chips constituted taking money or something of value in or from the gambling games. Winfrey appeals.

### ANALYSIS

■ The primary rule of statutory construction is to give effect to legislative intent as reflected in the plain language of the statute. *State v. Grubb*, 120 S.W.3d 737, 739 (Mo. banc 2003). Each word or phrase in a statute must be given meaning if possible. Related statutes are also relevant to further clarify the meaning of a statute. *State v. Withrow*, 8 S.W.3d 75, 80 (Mo. banc 1999). If the plain language of a criminal statute is ambiguous, the statute is construed in favor of the defendant. *Id.*

Section 313.380.4(9) provides that a person commits a class D felony if he or she:

Claims, collects, or takes, or attempts to claim, collect, or take, money or anything of value *in or from the gambling games*, with intent to defraud, without having made a wager contingent on winning a gambling game, or claims, collects, or takes an amount of money or thing of value of greater value than the amount won. (Emphasis added).

■ The state argues that the phrase "in or from the gambling games" includes taking something of value that is integral to gambling even if the taking occurred outside the context of a gambling game.

Following this reasoning, the state argues that Winfrey's conduct amounted to taking something of value "from" the gambling games because the casino chips exist solely as a means of exchange for gambling games. Under the state's interpretation, the statute requires no direct connection to any actual gambling.

The state's interpretation of section 313.830.4(9) is not warranted by the plain language of the statute. Although the statute does not require that one actually wager on a gambling game or otherwise directly participate in a gambling game, it does not follow that the statute covers conduct that has no connection to any actual gambling game. The statute does not provide that a felony is committed if one takes money or something of value from a casino. Instead, the statute plainly requires proof that a person took money or something of value "in" or "from" the "gambling games." The term "gambling games" refers to "games of skill or chance" in a casino, not the casino itself. Section 313.800.1(12). In this case, it is undisputed that Winfrey never participated in any manner in any gambling games. Instead, Winfrey lawfully purchased something of value—the casino chips—and, with the assistance of a cashier, exchanged those chips for an excess amount of money at the cashier's window. Winfrey's conduct may be criminal; however, he did not take money or anything of value that he had acquired either "in" or "from" any gambling game in violation of section 313.380.4(9).[3]

---

**3.** The state and the dissent both cite *United States v. Manarite*, 44 F.3d 1407 (9th Cir. 1995), and assert that the court in that case held that the phrase "in or from the gambling games" encompasses conduct that does not occur during a gambling game. In *Manarite*, the issue was whether the defendants had obtained money from a "specified unlawful activity" so as to sustain a federal money

laundering conviction. *Id.* at 1414. The "specified unlawful activity" at issue was a chip cashing scheme that violated a Nevada statute which, like section 313.380.4(9), prohibited fraudulently taking money or anything of value "in or from a gambling game." The scheme involved casino chips being "skimmed" off of blackjack tables with assistance of blackjack dealers and accomplices

The dissent asserts that Winfrey's conduct fits squarely within the statutory language because he obtained casino chips, did not make a wager, and "he 'collect[ed], or [took] an amount of money ... of greater value'..." by exchanging the chips for an amount in excess of the face value. The dissent's quoted paraphrase of the statute is not complete. The entire provision requires that the defendant "claim, collect, or take an amount of money or thing of value of greater value *than the amount won.*" The phrase "the amount won" implies a connection to actual gambling games, not simply defrauding the casino with casino chips lawfully purchased from the casino. The chips that Winfrey exchanged did not reflect an "amount won," but instead reflected an amount that he lawfully purchased from the casino. This Court will not extend a statute by judicial interpretation to include acts not specifically and unambiguously brought within its terms. *State v. Lloyd*, 320 Mo. 236, 7 S.W.2d 344, 346 (1928). The circuit court clearly erred in accepting Winfrey's plea to a crime that he did not commit.

The remainder of section 313.830.4 confirms that the phrase "in or from the gambling games" refers to various forms of cheating and fraud in gambling games. For instance, subdivision (1) of section 313.830.4 criminalizes bribing casino employees with the intent of influencing a gambling game. Subdivision 2 criminalizes the acceptance of such a bribe. Subdivisions 3, 4, 5, and 6 prohibit the use, manufacture, and distribution of various devices to cheat during a gambling game

as well as instructing others how to use such devices. Subdivisions 7 and 8 prohibit cheating by misrepresenting the outcome of a gambling game or using inside information to affect the outcome of a gambling game. Subdivision 10 prohibits illegal gambling. Subdivision 11 prohibits the use of counterfeit chips during a gambling game. Subdivision 13 prohibits the possession of any device intended to violate the statutes that regulate gambling. Subdivision 14 prohibits possession of any device for opening or affecting the operation of a gambling game. The state's assertion that the phrase "in or from the gambling games" includes conduct that has no impact on any specific gambling games is inconsistent with the other subdivisions of section 313.830.4, all of which have the purpose of preventing cheating and fraud in gambling games. The statutory context of section 313.830.4(9) confirms that the phrase "in or from the gambling games" does not include exchanging lawfully purchased casino chips for an amount in excess of the face value of the chips. Such conduct may be likely criminal under other statutes, but not under section 313.830.4(9).

The judgment is reversed, and the case is remanded.

LAURA DENVIR STITH, C.J., LIMBAUGH and WOLFF, JJ., concur.

RUSSELL, J., dissents in separate opinion filed; PRICE and BRECKENRIDGE, JJ., concur in opinion of RUSSELL, J.

---

posing as players. *Id.* at 1415. Unlike Winfrey's case, there is no doubt that the scheme in *Manarite* involved conduct that occurred "in ... a gambling game." Additionally, the *Manarite* court's conclusion that the Nevada statute did not require the taking to occur during an ongoing gambling game is not inconsistent with the majority opinion in this

case. This Court's majority opinion states that "[a]lthough the statute does not require that one actually wager on a gambling game or otherwise directly participate in a gambling game, it does not follow that the statute covers conduct that has no connection to any actual gambling game."

MARY R. RUSSELL, Judge, dissenting.

I respectfully dissent. Defendant, represented by counsel, pleaded guilty to committing an offense under section 313.830.4(9), RSMo 2000.[1] He admitted at his plea hearing that he went to his girlfriend's cashier window with chips that he had purchased from another window and that his girlfriend gave him $415 more in cash than the face value of the chips. When asked by the court if this was done for the purpose of committing a prohibited act on a gambling boat, the Defendant responded affirmatively and stated that it was his intent to defraud the casino. He answered the required litany of questions from the court, including that his plea was knowing and voluntary. He now seeks to have his plea set aside.[2]

The majority neglects to consider the standard of review for the denial of a post-conviction determination refusing to set aside Defendant's plea. Review is limited to whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Wilson v. State*, 813 S.W.2d 833, 834 (Mo. banc 1991). Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with a definite and firm impression that a mistake has been made. *Id.*

Defendant pleaded guilty to conduct in violation of section 313.830.4(9), which provides that a person commits a class D felony and is barred for life from gambling boats if the person:

[c]laims, collects, or takes, or attempts to claim, collect or take, money or anything of value in or from the gambling games, with intent to defraud, without having made a wager contingent on winning a gambling game, or claims, collects, or takes an amount of money or thing of value of greater value than the amount won[.]

Section 313.830.4(9).

Defendant's conduct fits exactly within the statute's language. He obtained casino chips with a face amount of $180 from a cashier at the casino. Without making a "wager contingent on winning a gambling game," he collected money by presenting his chips to another cashier for $595 with the purpose of defrauding the casino of $415. His admission of this conduct at the plea hearing sufficiently established the factual basis for the court to accept his guilty plea.

Although Defendant argues now that there was an insufficient factual basis for the plea, the motion court correctly determined that the facts that Defendant admitted by his plea of guilty would result in him being guilty of the offense charged. It is acceptable if the Defendant admits to the charges as read where the language used is "simple, specific and sufficient to inform the defendant in terms that a layman would understand what acts he was charged with committing, and the commission of which constituted the crimes charged." *Hoskin v. State*, 863 S.W.2d 637, 639 (Mo.App.1993).

The plain meaning of the words in the statute encompasses the Defendant's actions. The motion court correctly found that casino chips are an integral part of gambling games, since they are a necessary component to participate in many of

---

1. All further references are to RSMo 2000.

2. Defendant was sentenced to five years because he was a prior and persistent offender of two prior robbery convictions in Tennessee. He also pleaded guilty to the offense of tampering in the first degree and was sentenced to seven years to be served consecutively in the Missouri Department of Corrections, but this plea is not at issue in this appeal.

the games on the excursion gambling boats. Although the majority posits that the statute covers only conduct with a direct connection to actual gambling, casino chips are directly connected to gambling as their sole purpose is for use in gambling games.

The language in the statute "in or from the gambling games" criminalizes a range of behaviors that may or may not occur during or while actually engaged in a gambling game. This position was followed in *United States v. Manarite*, 44 F.3d 1407, 1415 (9th Cir.1995), in interpreting a Nevada statute, similar to section 313.380.4(9), which prohibited taking anything of value "in or from a gambling game." The crime involved the "skimming" of chips. The Ninth Circuit held that the statute did not require the taking to occur during a gambling game. Furthermore, by the Missouri legislature's use of the phrase, "without having made a wager contingent on winning a gambling game," it is implied that a person is not playing a game.

Other subdivisions of section 313.830.4, namely subdivisions 1, 2, 5, 6, and 13 are consistent with subdivision 9 in that they all criminalize conduct that could occur outside the "gambling games" and outside the confines of an excursion gambling boat, yet they still affect the integrity of the gambling games.[3]

Despite Defendant's belief that he is guilty only of the class A misdemeanor of stealing, the legislature clearly intended to protect the public as consumers from unscrupulous activities historically connected with gambling by making the sanctions more harsh for crimes committed in association with the gambling industry. *See Citation Bingo, Ltd. v. Otten*, 121 N.M. 205, 910 P.2d 281, 287 (1995) (finding that statutes providing for legalized gambling are to be construed strictly or narrowly because of the strong public policy against gambling); *State, Dept. of Law & Pub. Safety v. Gonzalez*, 142 N.J. 618, 667 A.2d 684, 689 (1995) (stating that at the very heart of this public policy is the confidence and trust of the public in the credibility

3.  Section 313.830.4 states in pertinent part:

    A person commits a class D felony and, in addition, shall be barred for life from excursion gambling boats under the jurisdiction of the commission, if the person:

    (1) Offers, promises, or gives anything of value or benefit to a person who is connected with an excursion gambling boat operator including, but not limited to, an officer or employee of a licensee or holder of an occupational license pursuant to an agreement or arrangement or with the intent that the promise or thing of value or benefit will influence the actions of the person to whom the offer, promise, or gift was made in order to affect or attempt to affect the outcome of a gambling game, or to influence official action of a member of the commission;

    (2) Solicits or knowingly accepts or receives a promise of anything of value or benefit while the person is connected with an excursion gambling boat including, but not limited to, an officer or employee of a licensee, or holder of an occupational license, pursuant to an understanding or arrangement or with the intent that the promise or thing of value or benefit will influence the actions of the person to affect or attempt to affect the outcome of a gambling game, or to influence official action of a member of the commission;

    . . . .

    (5) Manufactures, sells, or distributes any cards, chips, dice, game or device which is intended to be used to violate any provision of sections 313.800 to 313.850;

    (6) Instructs a person in cheating or in the use of a device for that purpose with the knowledge or intent that the information or use conveyed may be employed to violate any provision of sections 313.800 to 313.850;

    . . . .

    (13) Has in the person's possession any device intended to be used to violate a provision of sections 313.800 to 313.850[.]
    Section 313.830.4(1), (2), (5), (6), (13).

and integrity of the regulatory process and casino operations).

The motion court did not clearly err in overruling Defendant's motion to set aside his guilty plea. Its judgment should be affirmed.