SYLLABUS

(This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.)

**Johnson & Johnson v. Director, Division of Taxation (A-51-19) (083612)**

**(NOTE: The Court did not write a plenary opinion in this case. The Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Haas's opinion, published at 461 N.J. Super. 148 (App. Div. 2019).)**

**Argued October 27, 2020 -- Decided December 7, 2020**

**PER CURIAM**

The Court considers the Appellate Division's determination that, in light of the Legislature's 2011 amendment to N.J.S.A. 17:22-6.64, respondent Johnson & Johnson (J&J) was required to pay an insurance premium tax (IPT) based only upon its premium for risks localized in New Jersey rather than upon its total United States premium.

J&J is insured through Middlesex Assurance, which it wholly owns and which provides insurance exclusively to J&J. Middlesex is not a licensed or authorized insurance dealer in New Jersey. As a result, J&J's IPT requirements are governed by the statutes regulating New Jersey's "nonadmitted" or "unauthorized" insurance market.

The nonadmitted market is comprised of two main types of unauthorized insurance markets, which are separate and distinct from each other: the surplus lines market and the self-procured market. The principal difference is that surplus lines insurance is purchased through a surplus lines agent who bears responsibility for paying any insurance premium taxes, N.J.S.A. 17:22-6.59, while the insured is responsible for paying premium taxes on self-procured insurance, N.J.S.A. 17:22-6.64.

Prior to 2011, New Jersey collected IPT on both surplus lines and self-procured insurance that covered risks located in New Jersey. See N.J.S.A. 17:22-6.59 (2010) and -6.64 (2010). If the insurance covered risks located in other states as well, those other states could each assess IPTs based on the premium for the risk located there.

In 2011, Congress enacted the Nonadmitted and Reinsurance Reform Act (NRRA), 15 U.S.C. §§ 8201 to 8206. Most relevant here, the NRRA provides that, in cases where nonadmitted insurance covers multistate risks, "[n]o State other than the home State of an insured may require any premium tax payment for nonadmitted insurance." 15 U.S.C. § 8201(a).

1

That new Home State Rule prompted the New Jersey Legislature to amend certain state insurance laws. See L. 2011, c. 119. As relevant here, a sentence was added to both N.J.S.A. 17:22-6.59 and -6.64: "If a surplus lines policy covers risks or exposures in this State and other states, where this State is the home state, . . . the tax payable pursuant to this section shall be based on the total United States premium for the applicable policy."

Although that sentence was added to N.J.S.A. 17:22-6.64, the rest of that statute was left unchanged, including the statute's requirements that every holder of self-procured insurance report when it procures or continues coverage "upon a subject of insurance resident, located or to be performed within this State, other than insurance procured through a surplus lines agent pursuant to the surplus lines law of this State," and pay a five-percent IPT for such coverage.

Here, it is undisputed that J&J's insurance is self-procured. Prior to the 2011 Amendments, J&J accordingly paid IPT based on its New Jersey-located risks. The question here is whether, in light of the 2011 Amendments, J&J is now also required to pay IPT to its home state of New Jersey on its nationwide coverage. In other words, did the 2011 Amendments extend an obligation to pay IPT based on the total United States premium solely to holders of surplus lines policies, or did they also impose that obligation upon holders of self-procured policies, like J&J?

In the wake of the 2011 Amendments, J&J increased its IPT payments to reflect the amount due on its nationwide insurance premiums "as a precautionary measure." J&J continued to make those voluntary payments until November 2015, when it filed a claim with the Department of Banking and Insurance (DOBI) and the Director of the Division of Taxation (Division) seeking a refund of IPT in the amount of nearly $56 million, plus interest. The Division denied J&J's refund claim in August 2016.

J&J then filed a complaint in the Tax Court. See 30 N.J. Tax 479, 490-91 (Tax Ct. 2018). The Tax Court found in favor of the Division and DOBI, concluding that the 2011 "amendments apply the Home State Rule to all nonadmitted insurance including self-procured captive insurance." Id. at 513. The court acknowledged that "the addition of a paragraph in the self-procurement statute relating to surplus lines policies is problematic, as is the failure to remove the original language allocating the IPT to the location of the risk." Ibid. "Nonetheless," the court reasoned, "the Legislature's intent is clear and purposeful. By amending both N.J.S.A. 17:22-6.59 and -6.64, the Legislature kept consistent its equal treatment of nonadmitted insurers, and maximized its nonadmitted IPT revenue stream under the NRRA." Ibid.

The Appellate Division reversed, finding that "J&J's IPT obligation should have continued to be based solely upon the risks it insured that were located within New Jersey" because N.J.S.A. 17:22-6.64 provided -- both before and after the 2011 Amendments -- "that IPT was to be calculated at the rate of '5% of the gross amount of such premium' paid for insurance procured 'upon a subject of insurance resident, located or to be performed within [New Jersey].'" 461 N.J. Super. 148, 151 (App. Div. 2019).

2

Stressing that the original plain language of N.J.S.A. 17:22-6.64 "clearly limited J&J's tax liability to the risks it insured in New Jersey [and] was not changed in any way, shape, or form in the 2011 amendment to" that section, the Appellate Division explained that it was "bound to follow and apply" that language. Id. at 163. The appellate court was not persuaded that the sentence added to both N.J.S.A. 17:22-6.59 and -6.64 extended the application of the Home State Rule to self-procured policies because that added sentence "is limited by its express terms to 'surplus lines polic[ies] cover[ing] risks or exposures in this State and other states.'" Id. at 164 (quoting N.J.S.A. 17:22-6.64). The court reasoned that, because "J&J does not procure surplus lines coverage from Middlesex Assurance," that added sentence "is simply inapplicable to J&J." Ibid.

The Appellate Division ultimately declared itself "unable to conclude that the Legislature, by specifically stating that the Home State Rule only applied to surplus insurance coverage obtained through surplus line agents, likewise intended to extend it to the types of insurance coverage procured by J&J from Middlesex Assurance." Ibid.

The Court granted certification. 241 N.J. 94 (2020).

**HELD:** The judgment of the Appellate Division is affirmed substantially for the reasons expressed in Judge Haas's thoughtful opinion, which rests heavily on the plain language of N.J.S.A. 17:22-6.64. 461 N.J. Super. at 162-64. The Legislature, of course, may amend the statute if it chooses to do so.

**AFFIRMED**.

**JUSTICE LaVECCHIA, dissenting,** finds that the plain language argument advanced here asks the Court to put on blinders and ignore the effort the Legislature has made to achieve taxation of premiums on nationwide risks insured by entities for which New Jersey is the home state. Stressing the primacy of legislative intent in statutory construction, as well as the deference due the Division's interpretation of tax statutes, the dissent explains that the only conceivable purpose for including the new clause in N.J.S.A. 17:22-6.64 was to impose nationwide premium taxation on home-state insureds with self-procured coverage. That purpose is further evidenced by the new provisions allowing the State to engage in compacts with other states for the collection of taxation under N.J.S.A. 17:22-6.64 as well as -6.59. Noting that the Legislature has at times referred to all nonadmitted insurance as surplus lines coverage, without distinguishing between surplus lines insurance and self-procured insurance, the dissent opines that reading the new clause in -6.64 to draw such a distinction renders the clause meaningless.

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in this opinion. JUSTICE LaVECCHIA filed a dissent. JUSTICE PATTERSON did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-51 September Term 2019

083612

Johnson & Johnson,

Plaintiff-Respondent,

v.

Director, Division of Taxation, and Commissioner,
Department of Banking and Insurance,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
461 N.J. Super. 148 (App. Div. 2019).

Argued
October 27, 2020

Decided
December 7, 2020

William B. Puskas, Jr., Deputy Attorney General, argued
the cause for appellants (Gurbir S. Grewal, Attorney
General, attorney; Melissa H. Raksa, Assistant Attorney
General, of counsel, and William B. Puskas, Jr., on the
brief).

Margaret C. Wilson argued the cause for respondent
(Wilson Law Group, attorneys; Margaret C. Wilson, on
the brief).

PER CURIAM

1

The judgment of the Appellate Division is affirmed substantially for the reasons expressed in Judge Haas's thoughtful opinion, which rests heavily on the plain language of N.J.S.A. 17:22-6.64. Johnson & Johnson v. Dir., Div. of Tax'n, 461 N.J. Super. 148, 162-64 (App. Div. 2019). The Legislature, of course, may amend the statute if it chooses to do so.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in this opinion. JUSTICE LaVECCHIA filed a dissent. JUSTICE PATTERSON did not participate.

Johnson & Johnson,

Plaintiff-Respondent,

v.

Director, Division of Taxation, and Commissioner,
Department of Banking and Insurance,

Defendants-Appellants.

JUSTICE LaVECCHIA, dissenting.

I cannot join in the majority's affirmance of the Appellate Division's

judgment in this matter. For the reasons expressed herein, I agree with the

judgment of the Tax Court, which upheld the tax imposed on the corporate

taxpayer in this matter. I write separately to add my reasons for believing that

the Tax Court reached the correct outcome.

I.

This appeal requires the Court to review the State's tax treatment of

certain premiums paid by Johnson & Johnson (J&J) for insurance policies

following the Legislature's 2011 amendments and additions to what is

commonly known as the Surplus Lines Law. In those amendments, for reasons

set forth herein, the Legislature made evident its intent to exercise its right to

1

impose insurance premium taxation on the nationwide risks of an insured that has New Jersey as its home state, such as J&J. At stake in this interpretative question is whether the State must reimburse J&J the approximately $56 million in insurance premium taxes it has already paid on its self-procured insurance. In my view, J&J is not entitled to that reimbursement.

A brief recitation of the factual and procedural setting of this matter provides sufficient context for my disagreement with the majority's outcome in this appeal.

J&J is an international corporation headquartered in New Brunswick, New Jersey. J&J maintains insurance purchased through Middlesex Assurance, a Bermuda corporation that was subsequently re-domiciled in Vermont. Middlesex Assurance is wholly owned and controlled by J&J, making Middlesex Assurance a single-parent captive insurance company. Middlesex Assurance is not a licensed or authorized insurance dealer in New Jersey.

The insurance at issue is regulated under the Surplus Lines Law, N.J.S.A. 17:22-6.40 to -6.65. New Jersey assesses a tax of five percent on all insurance premiums (insurance premium tax or IPT) from unauthorized foreign or alien insurers, sometimes referred to as nonadmitted insurers. N.J.S.A. 17:22-6:59 and -6.64. Our law divides the nonadmitted insurance market into

2

two categories: surplus lines insurance and self-procured insurance. The principal difference is that surplus lines insurance is purchased through a surplus lines agent who bears responsibility for paying any insurance premium taxes, while the insured is responsible for paying premium taxes on self-procured insurance, which is obtained without an agent. Ibid.

Before 2011, federal law permitted states to assess taxes on premiums paid to nonadmitted insurers only to the extent that those premiums covered risks in-state. The federal Nonadmitted and Reinsurance Reform Act (NRRA) modified that scheme to both limit and expand state powers to tax insurance. Now, under the NRRA, nonadmitted insurance premiums may be taxed only by the "home state" of the insured entity. 15 U.S.C. §§ 8201(a), 8206(6)(A). But that home state may tax the whole of that insured entity's nonadmitted premiums -- even if some or all of the insured risks are situated out-of-state. 15 U.S.C. § 8201(a).[1]

To make use of that newfound authority to tax, the New Jersey Legislature passed S. 2930 (2011) (the 2011 Amendments) for the express purpose of "bring[ing] the surplus lines law . . . into compliance with the

---

[1] State taxes imposed pursuant to the NRRA are sometimes referred to as relying on the "Home State Rule"; however, for simplicity's sake, this dissent shall refer to an IPT assessed upon the whole of an in-state entity's insurance premiums as "nationwide premium taxation" or a "nationwide IPT."

[NRRA]." Sponsors' Statement to S. 2930 7 (L. 2011, c. 119). The 2011 Amendments altered both N.J.S.A. 17:22-6.59, the section imposing taxation on surplus lines coverage, and N.J.S.A. 17:22-64, the section imposing a tax on all other nonadmitted insurance coverage. Both sections now include an identical clause regarding nationwide premium taxation:

> If a surplus lines policy covers risks or exposures in this State and other states, where this State is the home state, as defined in section 7 of L. 1960, c. 32 ([N.J.S.A.] 17:22–6.41), the tax payable pursuant to this section shall be based on the total United States premium for the applicable policy.
>
> [N.J.S.A. 17:22-6.59 and -6.64.]

J&J had historically paid the New Jersey Division of Taxation (the Division) within the Department of the Treasury IPT on the portion of its premiums allocable to risks in New Jersey. After the 2011 Amendments, J&J increased its IPT payments to reflect the amount due on its nationwide insurance premiums in what it describes "as a precautionary measure." However, in 2015, J&J concluded that, notwithstanding the enactment of the 2011 Amendments, it was required to pay IPT only on the portion of its insurance premiums attributable to New Jersey-based risks. It therefore filed a claim with the Division seeking the refund of its claimed IPT overpayment in the amount of $55,902,070.95 plus interest.

4

J&J principally argued that the NRRA and the new statutory language quoted above, which was inserted into N.J.S.A. 17:22-6.59 and -6.64 via the 2011 Amendments, changed only the tax treatment of surplus lines coverage. Because J&J did not purchase its insurance through a surplus lines agent, J&J claimed that it held self-procured insurance, which it argued was unimpacted by the 2011 Amendments.

The Department of Banking & Insurance, and specifically the Commissioner of that Department, is assigned supervisory and administrative responsibilities in the regulatory area that includes this taxing scheme. See generally N.J.S.A. 17:22-6.40 to -6.84.[2] The Department issued a letter rejecting J&J's asserted basis for claiming entitlement to a refund because, in its view, the 2011 Amendments extended to self-procured policies such as J&J's. Thereafter, the Division denied the claim.

---

[2] In particular, the Commissioner is empowered to set standards for financial integrity for nonadmitted surplus lines insurers eligible to have insurance placed through a licensed surplus lines agent and to publish lists of such eligible insurers, N.J.S.A. 17:22-6.45; to establish and operate "The Surplus Lines Examining Office," id. at -6.48; to revoke the license of a surplus lines agent, id. at -6.61; to collect taxes levied upon premiums for other nonadmitted insurance, which tax is required to be paid by an insured and not through a surplus lines agent, id. at -6.64; to order production of records relating to nonadmitted insurance policies, id. at -6.65; to enter into interstate compacts allocating taxation authority over policies that cover multi-state risks, id. at -6.69d; and to adopt rules and regulations governing nonadmitted insurance policies, id. at -6.69g.

J&J then filed this action with the Tax Court. The matter proceeded on the basis of cross motions for summary judgment.

In granting summary judgment for the Division and denying summary judgment to J&J, the Tax Court held that J&J was not entitled to the reimbursement requested. Johnson & Johnson v. Dir., Div. of Tax'n, 30 N.J. Tax 479, 513 (Tax 2018). Although the Tax Court did not rely on the Division's argument that the term "surplus lines policy" in the newly added sentence inserted into N.J.S.A. 17:22-6.59 and -6.64 was definitionally meant to include both surplus lines coverage and self-procured coverage, the court nevertheless held that the 2011 Amendments evidenced an overall legislative intent to impose nationwide premium taxation on both surplus lines policies and self-procured coverage. Id. at 511. The Tax Court took into account the Legislature's consistent pattern of treating the two types of policies equally. Id. at 511-12. That -- when combined with the perceived clear legislative intent to impose nationwide insurance premium taxation -- was determined to outweigh the reference to "surplus lines policies" in the newly inserted language in N.J.S.A. 17:22-6.64, taking into consideration the identical language in both statutes. Id. at 512-13.

J&J appealed, and the Appellate Division reversed and remanded the matter for a determination of the amount of refund due to J&J. Johnson &

6

Johnson v. Dir., Div. of Tax'n, 461 N.J. Super. 148, 165 (App. Div. 2019). The court held that the plain language of the new insertion into N.J.S.A. 17:22-6.64 is limited to surplus lines coverage, which does not include self-procured coverage. Id. at 163-64. The panel further relied on the principle that, even if it found some ambiguity in the legislative amendment, that ambiguity would have to be resolved in favor of the taxpayer, J&J. Id. at 165.

II.

In this matter of statutory interpretation involving a pure question of law, our Court's review is de novo. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995). The arguments take two starkly different views of legislative intent concerning the perplexing insertion of identical language into two provisions dealing with the taxation of insurance premiums paid by home-state insureds with respect to two categories of nonadmitted insurers in the wake of a change in federal law that prompted revision in the states' taxing of such premiums.

The Division's arguments can be summarized as a straightforward proposition: the Legislature's historically parallel treatment of surplus lines coverage and self-procured coverage, combined with the Legislature's clear intention that the 2011 Amendments impose nationwide IPT, should be read to outweigh the technical language of the statutes. The Division points to further

evidence of legislative intent by noting the addition of a new section allowing the Commissioner of Banking and Insurance to enter into compacts with other states -- for administrative ease and efficiency in the collection of receipts from entities that implicate multi-state risks -- with respect to taxes to be collected under either N.J.S.A. 17:22-6.59 or -6.64. In addition, the Division highlights legislative history discussing the State's loss of revenue from NRRA and expressing an intent to "maximize the tax revenue rightfully due and owing the State." Sponsors' Statement to S. 2930 8 (L. 2011, c. 119). In sum, the Division maintains that the new authority granted to the Commissioner plainly evidences the Legislature's intention to allow collection through -6.64 of nationwide premium taxation on self-procured risks for home-state insureds.

J&J, in turn, roots its argument in the asserted plain language of the statute. J&J cites language within the Surplus Lines Law indicating that the act does not apply to "insurance coverages which are independently procured as provided in [N.J.S.A. 17:22-6.64]." N.J.S.A. 17:22-6.40 (emphasis added). The text of -6.64 begins by clarifying that it extends to insurance "other than insurance procured through a surplus lines agent pursuant to the surplus lines law." According to J&J, while both sections were created through the same enactment, the Surplus Lines Law clearly distinguishes self-procured insurance

8

-- which is <u>not</u> obtained through a surplus lines agent -- from surplus lines coverage. J&J asserts that the new language addressing "the total United States premium," quoted in full above, can therefore impact only surplus lines coverage (i.e., not self-procured insurance), even though that language was inserted into N.J.S.A. 17:22-6.64, a provision that addresses only self-procured insurance.

III.

For me, the plain language argument asks the Court to put on blinders and ignore the effort the Legislature has made to achieve taxation of premiums on nationwide risks insured by entities for which New Jersey is the home state. I cannot accept the argument.

The "overriding goal" of statutory construction "must be to determine the Legislature's intent." <u>Dep't of Law & Pub. Safety v. Gonzalez</u>, 142 N.J. 618, 627 (1995). We have heretofore always recognized that "when a 'literal interpretation of individual statutory terms or provisions' would lead to results 'inconsistent with the overall purpose of the statute,' that interpretation should be rejected." <u>Hubbard ex rel. Hubbard v. Reed</u>, 168 N.J. 387, 392-93 (2001) (quoting <u>Cornblatt v. Barow</u>, 153 N.J. 218, 242 (1998)). Indeed, the Legislature has acknowledged that very principle in the statute to which we adhere when following its direction on statutory construction: N.J.S.A. 1:1-1

9

provides that, when interpreting a law, courts should give words their plain meaning "unless inconsistent with the manifest intent of the legislature." Through that language, the Legislature asks courts to opt for intended results, not ones that are contrary to manifest intent.

Furthermore, the Court owes deference to the Division's interpretations of tax statutes. The Division's interpretation of a tax statute "is entitled to prevail, so long as it is not plainly unreasonable." Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 327 (1984). Such deference is especially appropriate "when the case involves the construction of a new statute by its implementing agency." Nat. Res. Def. Council, Inc. v. Train, 510 F.2d 692, 706 (D.C. Cir. 1974). That principle is plainly applicable here, for the Department of Banking and Insurance has weighed in, and strongly, concerning the intent of the adjustment to the taxing of premiums paid by home-state insureds to nonadmitted insurers in the wake of the change in federal law.

The only conceivable purpose for including the new clause in N.J.S.A. 17:22-6.64 was to impose nationwide premium taxation on home-state insureds with self-procured coverage. The NRRA was specifically passed with a future effective date to allow states to recalibrate their insurance taxation systems. Following the passage of the NRRA, at least forty-three states

10

undertook such reforms. <u>Insurance Oversight: Policy Implications for U.S. Consumers, Businesses and Jobs: Hearing Before the H. Subcomm. on Ins., Housing, & Cmty. Opportunity</u>, 112th Cong. 29 (2011) (statement of Letha Heaton on behalf of the National Association of Professional Surplus Lines Offices, Ltd.). Those reforms typically had the same, clear objective: to claim the newly available revenue (from nationwide taxation of nonadmitted insurance held by "at home" entities) to compensate for the revenue withdrawn (from taxation of nonadmitted insurance on in-state risks held by out-of-state entities). <u>See, e.g.</u>, 78 Del. Laws <u>c.</u> 176 (2011) ("[P]rotecting the revenue of this State . . . may be accomplished by facilitating the payment and collection of premium tax on nonadmitted insurance . . . ."); <u>Fiscal Note to S. 1096 (2011 Pa. Laws 194, No. 28)</u> (June 26, 2011) (noting that imposing nationwide taxation on home-state insureds would compensate for revenue loss caused by the NRRA).

In New Jersey's instance, as noted above, the 2011 Amendments introduced the same clause into the sections dealing with surplus lines coverage and self-procured coverage:

> If a <u>surplus lines policy</u> covers risks or exposures in this State and other states, where this State is the home state, as defined in section 7 of <u>L.</u> 1960, <u>c.</u> 32 ([N.J.S.A.] 17:22-6.41), the tax payable pursuant to this section shall be based on the total United States premium for the applicable policy.

11

[N.J.S.A. 17:22-6.59 and -6.64 (emphasis added).]

Accepting J&J's interpretation, that provision is not just effectively a nullity, it is a wholly meaningless addition to N.J.S.A. 17:22-6.64 because N.J.S.A. 17:22-6.59 already adopts a rule of nationwide premium taxation for surplus lines policies. We have said repeatedly that courts "must avoid an interpretation that renders words in a statute surplusage." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013). The Court should "assume that the Legislature purposely included every word, and[] strive to give every word its logical effect." Id. at 441.

The canon against surplusage weighs heavily in favor of reading N.J.S.A. 17:22-6.64 in the sensible manner that the Legislature clearly intended, rather than rendering the Legislature's enactment entirely ineffectual. And the legislative history of the Surplus Lines Law provides still more support for the Division's position.

The history of legislative actions relating to the surplus lines section, N.J.S.A. 17:22-6:59, and the self-procured section, N.J.S.A. 17:22-6:64, demonstrates that the Legislature has used the term "surplus lines" as interchangeable with "nonadmitted insurance," i.e., to encompass both surplus lines insurance and self-procured insurance. When the Legislature raised the tax on nonadmitted insurers from three percent to five percent, the legislative

12

budget committee statement in the General Assembly explained that "[t]his bill, as amended, increases the premium receipts tax for surplus lines coverage from 3% to 5%." Assem. Budget Comm. Statement to A. 1408 1 (June 22, 2009). But the law increased the tax rates on both surplus lines policies and self-procured policies. L. 2009, c. 75, §§ 4, 5. Similarly, the Office of Legislative Services estimated the revenue increase from the elevated tax on "Surplus lines carriers" as if the adjustments to N.J.S.A. 17:22-6:59 and -6.64 impacted a singular tax. Legis. Fiscal Estimate for A. 1408 1 (June 22, 2009). Nowhere in the legislative history of the 2009 law does there appear a reference to self-procured insurance as being separate from surplus lines insurance. Additionally, L. 1996, c. 69, which provided a series of technical fixes to the Surplus Lines Law, is entitled "An act concerning surplus lines insurers," despite its application to both N.J.S.A. 17:22-6:59 and -6.64.

This case is a far cry from one where it can be said that a statute's language plainly directs its outcome, in my view. Further evidence of the lack of a plain meaning to be attributed to the "surplus lines coverage" verbiage used in the two clauses added in 2011 -- and specifically those words where inserted into N.J.S.A. 17:22-6.64 -- can be gleaned from review of other relevant provisions of the Surplus Lines Law.

13

It is important to consider here that "surplus lines coverage" is not a defined term in the Surplus Lines Law. See N.J.S.A. 17:22-6.41. However, the law does offer a definition of "surplus lines insurer" that is quite broad: "an unauthorized insurer in which an insurance coverage is placed or may be placed under this surplus lines law." N.J.S.A. 17:22-6.41(b). That broad reference reaches all nonadmitted insurance, including self-procured insurance, because self-procured insurance is covered by N.J.S.A. 17:22-6.64, which was enacted as a part of the Surplus Lines Law. L. 1960, c. 32, § 30.

The interpretation advanced by the Division -- that the undefined phrase "surplus lines coverage" in -6.59 incorporates a reference to both self-procured polices and policies procured through a surplus lines agent -- does not make the 2011 Amendments redundant as to -6.64. The amendatory language needed to be separately included in -6.64 because the tax imposed through that section is collected from the insured rather than through a surplus lines agent, as in -6.59. Inclusion of the amendatory language solely in N.J.S.A. 17:22-6.59 would have been insufficient to impose an IPT on the premiums for self-procured insurance. There had to be a second inclusion in -6.64 because there is no agent (as there is in -6.59) on whom to impose the duty to collect the tax. Placing the reference in both statutes was necessary to effectuate the tax's collection. Thus, the Division's interpretation does not render N.J.S.A. 17:22-

14

6.64's levy of the IPT upon self-procured coverage to be without meaning or legal effect.

On the other hand, the canon against surplusage does not work in an opposite direction to support J&J's position. To be sure, N.J.S.A. 17:22-6.40 states that the Surplus Lines Law -- which includes -6.64 -- does not apply to -6.64, but that statement is not as paradoxical as it appears. As Division's counsel argued, there are regulatory provisions governing surplus lines agents' procurement of surplus lines insurance that are not applicable to self-procured insurance from unaffiliated insurers. In -6.40, in contrast to -6.59, the term "surplus lines" is used not as a catch-all denoting all nonadmitted insurance, but rather to refer to a specific category of nonadmitted insurance.[3]

The NRRA defined its terms so as to clearly apply to "surplus lines or independently procured insurance coverage." See 15 U.S.C. § 8206(12) (emphasis added). As the Division argues, the NRRA included the word "or," emphasizing that "[i]f Congress wanted the NRRA to apply only to surplus lines transactions, it would have said so. It did not." Sadly, this appeal would

---

[3] This Court has contributed to a muddying of the two categories on occasion. See, e.g., R.R. Roofing & Bldg. Supply Co. v. Fin. Fire & Cas. Co., 85 N.J. 384, 389 (1981) (defining "[s]urplus lines insurance [as] involv[ing] New Jersey risks which insurance companies authorized or admitted to do business in this State have refused to cover by reason of the nature of the risk"). Technically, that definition describes nonadmitted insurance as a whole, which encompasses both surplus lines coverage and self-procured insurance.

have been much more straightforward had the amendatory language used by the Legislature in the wake of the NRRA's enactment been similarly clear in expression. Rather, it appears that the Legislature has allowed itself on several occasions in the past, and again in the 2011 Amendments, to be lulled into referring to all nonadmitted insurance as surplus lines coverage, without acknowledging the Surplus Lines Law's original distinction between surplus lines insurance and self-procured insurance. Nevertheless, the legislative amendments enacted in 2011 to render New Jersey taxation in this area consistent with the rules of the NRRA convey to me an unmistakable intent to impose nationwide premium taxation on both forms of nonadmitted insurance.

Because the amendments' structure, new compact provisions, and legislative history reveal the Legislature's intent to capture this revenue, I find inapplicable the default rule provided in <u>Fedders Financial Corp. v. Director, Division of Taxation</u>, 96 N.J. 376, 385-86 (1984), which resolves ambiguity in a tax statute, after other efforts to discern legislative intent fail, in favor of the taxpayer. That rule applies when there is no evidence of legislative intent in the extrinsic aids available to instruct a court. I find evidence of the legislative intent unmistakable here for the reasons expressed. Therefore, I decline to ignore that intention and require the State to reimburse paid premiums that J&J

16

has made in IPT for its nationwide insured risks covered by insurance it self-procured through its wholly owned captive insurance company.

For all those reasons, I respectfully dissent.